J-S44011-22

2023 PA SUPER 53

| | | |
|---|---|---|
| SARA D'ARCY CROCKER-FASULO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGG JOSEPH FASULO | : | |
| | : | |
| Appellant | : | No. 990 MDA 2022 |

Appeal from the Order Entered June 17, 2022
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-09-10259

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

OPINION BY PANELLA, P.J.: **FILED: MARCH 31, 2023**

Gregg Joseph Fasulo ("Husband") appeals from the order which granted his petition to terminate or modify his alimony to Sara D'arcy Crocker-Fasulo ("Wife"), and reduced his alimony owed to Wife to $2,500 per month. Husband contends the trial court should have terminated his alimony payments due to his deteriorating health condition; the trial court erred in failing to modify the alimony amount retroactively to the date he filed the petition; and the trial court should have terminated his $1 million life insurance obligation to Wife. We affirm.

The trial court set forth the relevant factual and procedural history as follows:

> The parties were married October 2, 1982, while Husband was in medical school. Following the marriage, Husband continued

---

[*] Retired Senior Judge assigned to the Superior Court.

his medical training and Wife continued to work until the birth of the parties' first child in May of 1987. After the birth of their child, Wife remained a full-time mother and homemaker. Wife also contributed a $40,000.00 inheritance to the marriage. Husband graduated medical school in 1985 and completed his residency in general orthopedic surgery in 1992.

The parties separated October 10, 1998, when Husband left the marital home. Wife continued in her role as mother and homemaker while Husband provided voluntary payments to ensure that the household needs and the needs of the minor children were met. At the time of separation, marital assets included the house equity and contents, cars, a checking account, a small pension Husband had with his employer, Lancaster Orthopedic Associates, and Husband's interest in an airplane. At the time of separation, Husband was negotiating to become a shareholder in Lancaster Orthopedic Group. The vast majority of his assets have been accumulated since separation after he became a shareholder in his new medical practice.

Wife filed for divorce in July of 2009, and, following a hearing in October of 2010, a final divorce decree was entered on January 20, 2012. As part of the divorce decree, the [trial c]ourt determined that Wife had no earned income and ordered permanent alimony in the amount of $8,500.00/month, transfer of the marital home to Wife, and for Husband to maintain a $1,000,000.00 life insurance policy with Wife as the beneficiary. The decree also contemplated that Wife would sell or refinance the marital home within three years. Wife received no cash, retirement or other form of investment asset in the divorce.

Wife began working part-time for [Court Appointed Special Advocates for Children] in 2013, when she was already 57 years of age. She began full-time employment approximately a year later, and, in 2015, became the organization's program director with [an] annual salary of approximately $62,000.00. [Wife] stated her intent to retire at age 68 in April[] 2023. She does not have a pension through her employment[,] and she began to receive health insurance through Medicare when she reached age 65. Wife sold the marital residence in 2016, realizing $265,000.00 net [profit] and from that amount she purchased two $100,000.00 annuities and put $20,000.00 toward the purchase of a condominium with her sister. She and her sister continue to reside

in the condominium, which has a mortgage until 2030, and share some expenses.

Wife estimates that her total pay is approximately $3,500.00/month and her total expenses are about $5,300.00/month. She indicated she has three potential income streams for retirement—her two annuities, Social Security, and an investment/IRA account—which she projected to provide $3,800.00 to $4,000/month. … [T]he total value of her accounts [is] $467,533.00 as of December 31, 2021. Although she would be eligible to collect Social Security upon retirement, she indicate[d] a desire to defer doing so until age 70.

Following separation, Husband made a substantial income as an orthopedic surgeon. However, beginning in 2012, he began to experience symptoms of Parkinson's Disease. Although he shifted to a non-surgical practice, he was eventually unable to see patients. He was diagnosed with Parkinson's Disease in 2015 and resigned as a partner in Lancaster Orthopedic Group in June of that year. He was declared incapable of performing surgery effective July 1, 2015. Husband was able to collect benefits from five private disability policies which provided him with an income of approximately $27,000.00/month initially. These policies have begun to expire, and only one is still paying benefits of $2,159.00/month. This last policy [expired] at the end of 2022. Husband has also done medical consulting and has performed independent medical examinations. He stated that he did only two [examinations] in the last year due to Covid, and acknowledged that, while he is still able to do such examinations, he actually lost money doing them. Husband indicated he had no earned income in 2021, although he had investment income, and he had to tap into savings and his IRA to meet expenses.

Husband, 65 years of age, owns a home which was built in 2005 and has a 30[-]year mortgage with a balance of approximately $108,000.00. The monthly mortgage payment is $2,670.40, for principal and interest, and does not include taxes. Husband agreed that he is paying some extra on principal each month. He lives with his wife, his wife's two children (14 and 19 years of age), and his mother-in-law. His wife is self-employed as an accountant and earns … $25,000.00 per year. Other [than] his house, Husband indicated that most of his expenses are medical—drugs and therapies—related to his disease. Husband stated that there is no cure for his condition. He testified that he has difficulty

with activities of daily living, but there is no prediction that he would have to go into residential care within the next eighteen months. He stated that he pays approximately $16,000.00 per year for health insurance.

Husband testified that he had approximately $275,000.00 in cash on hand at the end of 2021, which is designated for his care. He also has a Schwab rollover IRA and a Schwab non-qualified investment account with a total balance of about $2,800,000.00, an annuity with approximately $400,000.00. He will also receive an additional $277,209.00 by the end of 2022 for the sale of his interest in medical practice real estate.

Following his diagnosis, [Husband and Wife agreed to multiple modifications to the alimony payment and on January 1, 2020, Husband was paying $3,750.00 per month in alimony.] Husband filed his most recent petition for modification or termination of alimony on August 30, 2021, asking the [trial c]ourt to substantially reduce and then terminate his alimony obligation. Husband proposed a schedule whereby payments to [W]ife would be reduced to $2,550.00 per month as of September 17, 2021, then reduced again to $1,128.00 per month as of January 20, 2022, then reduced to $303.00 per month effective February 1, 2022, and finally terminated as of the end of 2022. Husband further requested that the condition that he maintain a life insurance policy with Wife as beneficiary be terminated at the same time as his alimony.

Wife filed a response and new matter on November 9, 2021…. Husband filed his response to new matter on January 20, 2022. Husband acknowledged that, at the time of the divorce decree, there was a significant income disparity between the parties. He noted, however, that, in addition to alimony, Wife was awarded 53.10% of the total marital assets …. Husband also denied that he would have substantial income from his assets which were non-marital assets and asserted that any order directing him to liquidate non-marital assets would be an award of non-marital property and a violation of Pennsylvania law.

A hearing was held on February 14, 2022, at which the parties entered into a stipulation of facts and submitted as well as a number of joint exhibits.

Trial Court Opinion and Order, 6/17/22, at 1-6 (footnotes omitted).

On June 17, 2022, the trial court entered an order reducing the alimony award to $2,500 per month, effective the month after the order was entered. The trial court stated Husband could seek further reduction of alimony when Wife begins to collect Social Security or if the progress of his disease resulted in an increase in the amount required for his care each month. Finally, the trial court found that Husband must continue to maintain a life insurance policy in the amount of $1 million with Wife as beneficiary. Husband filed a timely appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement.

On appeal, Husband raises the following questions for our review:

1. Did the lower Court abuse its discretion and commit an error of law in failing to terminate [Husband's] alimony obligation in light of his Parkinson's Disease disability, his involuntary retirement with a significant reduction in income, and the result that the Court Order, in effect, results in a transfer of non-marital assets from [Husband] to [Wife] by a forced liquidation of his non-marital assets to pay [Wife]?

2. Did the lower Court abuse its discretion and commit an error of law in failing to make its alimony modification order effective retroactive to the date of the filing of the Petition by [Husband] which was August 30, 2021?

3. Did the lower Court abuse its discretion and commit an error of law in ordering [Husband] to continue providing a one-million-dollar life insurance policy payable to [Wife] as beneficiary?

Appellant's Brief at 6-7.

In his first claim, Husband contends that the trial court abused its discretion in failing to terminate his alimony obligation in light of his disability and subsequent retirement, which resulted in a significant reduction in income. *See id.* at 15, 27-32. Husband argues that although alimony is a

transfer of income from one spouse to another, it should not constitute a post-divorce transfer of non-marital assets. ***See id.*** at 18, 19-20. According to Husband, the trial court's order forces him to liquidate non-marital assets and transfer them to Wife. ***See id.*** at 15-17, 19, 21-22. Husband claims the trial court improperly focused on the asset imbalance between the parties and Wife's budget, which showed her need for financial assistance to meet her expenses. ***See id.*** at 30, 32. Husband asserts that the circumstances in this case have changed from the time alimony was first awarded to Wife, highlighting his and Wife's substantially altered incomes and his deteriorating health, which prevented him from working. ***See id.*** at 21-22, 27-29; ***see also id.*** at 20 (noting that support guidelines can be used in determining an alimony award). Husband maintains that this is a backdoor division of non-marital property that he had accumulated after the parties' separation and divorce. ***See id.*** at 30.

"An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award." ***Cook v. Cook***, 186 A.3d 1015, 1020 (Pa. Super. 2018) (citation omitted).

> [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved

by way of an equitable distribution award and development of an appropriate employable skill.

In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Leicht v. Leicht*, 164 A.3d 1246, 1248 (Pa. Super. 2017) (citation omitted).

In deciding "whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider all relevant factors, including the 17 factors that are expressly mandated by [23 Pa.C.S.A. § 3701(b)]." *Cook*, 186 A.3d at 1020 (citation omitted)). Notably, "the factors in Section 3701(b) do not create an exhaustive list." *Conner v. Conner*, 217 A.3d 301, 316 (Pa. Super. 2019) (citation omitted).

The trial court addressed Husband's claim as follows:

While the [trial c]ourt is aware that alimony is premised not solely on the relative prosperity of the payor, but upon the reasonable needs of the recipient, *Nemoto v. Nemoto*, 620 A.2d 1216, 1221 (Pa. Super. 1993), the evidence presented demonstrated that Wife is, and will continue to be, unable to meet her reasonable monthly expenses without the financial assistance she receives from Husband.

In determining [the] amount that Husband should pay going forward, the [trial court] took into account the assets available to him despite his changed circumstances. The Divorce Code does not define what constitutes income for purposes of assessing alimony, but case law indicates that retirement income is properly considered in calculating alimony even where the payor was

- 7 -

previously granted absolute entitlement to the pension income. ***McFadden v. McFadden***, 563 A.2d 180, 184 (Pa. Super. 1989). In the present case, Husband's retirement income was not subject to equitable distribution at the time of the divorce, but it should be taken into account at this point.

A review of the alimony factors and the facts of the case shows that there was, and remains, a significant economic imbalance between the parties that cannot be overcome other than through the imposition of what the [c]ourt at the time of its Order of August 31, 2011, deemed "permanent alimony." That imbalance is well illustrated by the fact that Husband, at the peak of his surgical career, made over $800,000 in a single year. This one year of earnings is more than Wife has earned in her entire career. Further, because of his income as an orthopedic surgeon, Husband has been able to set aside significant assets which continue to generate income, which Wife has not been able to do. Although more [than] $200,000 of Husband's income for 2021 was derived from his disability insurance policies, his total income for 2021 exceeded $500,000. That amount is more [than] eight times Wife's annual income and the amount he received from sources other than his disability insurance policies was still more than four times Wife's total income for the year. Additionally, Husband testified that he had approximately $275,000 in cash on hand at the end of 2021, which is designated for his care, and he is set to receive an additional sum of $277,209 by the end of 2022 for the sale of his interest in medical practice real estate. Husband also stated that his personal expenses for food, gas, clothing and the like was $5,000 per month, which the [trial c]ourt thought at the time to be somewhat excessive and which is still twice the amount the [trial c]ourt awarded in alimony. Thus, he has funds in hand to provide for his own medical care and the amount he is expected to receive by the end of this year, if annualized, would offset to some extent the loss of his disability policies. Wife even suggested that Husband could use part of the money he will receive for the sale of medical practice real estate to pay off the mortgage on his home and free up money currently directed to that expense. Regardless, there is a clear and substantial income imbalance in this case which is heavily in Husband's favor.

Further, despite Husband's assertion to the contrary, the [trial c]ourt absolutely considered his retirement and disability in making its decision. The [trial c]ourt specifically acknowledged that Husband had experienced changed circumstances, and these

circumstances were taken into effect, both through the voluntary reductions in alimony negotiated between the parties prior to this litigation and by the [trial c]ourt in its decision which significantly reduced Husband's monthly obligation by 33%, from $3,750 to $2,500. The [trial c]ourt determined that this amount represented what was needed to satisfy Wife's reasonable monthly expenses, and that Husband's physical and financial condition had not changed to the extent that he would be unable to pay this amount. In fact, given Husband's high income and expected additional sum of more [than] $277,000 at the end of the year, the $2,500 per month amount set by the [trial c]ourt is far from unreasonable and is consistent with appropriate alimony. Further, the [trial c]ourt explicitly kept the door open for future adjustments and stated in its order that Husband could petition for further reduction or termination of alimony in the event his physical condition deteriorated or if Wife's retirement income was greater than anticipated. In the end, the [trial c]ourt is of the opinion that the proper course in this case would be for Husband to seek further relief in the future as circumstances dictate, as he is permitted to do, rather than to terminate alimony at this time.

Trial Court Opinion, 8/22/22, at 5-7.

Here, the trial court properly considered the 17 factors articulated in Section 3701(b) and found that the alimony should not be terminated, but instead be modified to a monthly payment of $2,500 to Wife. *See* Trial Court Opinion and Order, 6/17/22, at 7-12. Moreover, while Husband argues that the trial court could not examine his non-marital assets obtained after divorce in determining alimony, under the factors set forth at Section 3701(b), the trial court was required to consider "[t]he sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits" and "[t]he relative assets and liabilities of the parties." 23 Pa.C.S.A.

§ 3701(b)(3), (10); *see also Cook*, 186 A.3d at 1020.[1] Husband does not dispute the value of his assets and liabilities. Furthermore, the trial court fully considered Wife's assets, the fact she could collect Social Security soon, and Husband's disease. To that end, the trial court explicitly affirmed that Husband could seek a reduction of the alimony when Wife begins to collect Social Security or if the progress of his disease results in an increase in the amount required for his care. In effect, the trial court simply viewed the relevant factors differently than Husband contends it should have. *See Lawson v. Lawson*, 940 A.2d 444, 449 (Pa. Super. 2007) (noting that the trial court must consider and weigh the statutory factors before granting alimony). Therefore, because the trial court considered the totality of the circumstances and found that Wife requires alimony to sustain her standard of living and Husband still has the ability to pay, we find the trial court did not abuse its discretion in modifying the alimony to the reduced amount of $2,500 per month. *See Llaurado v. Garcia-Zapata*, 223 A.3d 247, 259 (Pa. Super. 2019) (concluding that the trial court did not abuse its discretion in fashioning the alimony award where it adequately addressed the Section 3701(b)

---

[1] We note that Husband also references a "double dip" in his argument. *See* Appellant's Brief at 24. It is well-settled that "[w]e do not condone 'double dipping', *i.e.*, using the same revenue as a source for 'support' and 'equitable distribution.'" *Rohrer v. Rohrer*, 715 A.2d 463, 466 (Pa. Super. 1998) (citation omitted). However, Husband failed to raise this issue in his Pa.R.A.P. 1925(b) concise statement or articulate any analysis to establish the trial court double dipped in awarding alimony; therefore, any such claim is waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2119(a).

factors); ***Isralsky v. Isralsky***, 824 A.2d 1178, 1188 (Pa. Super. 2003) ("Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." (citation and quotation marks omitted)).

In his second claim, Husband contends the trial court erred in failing to make the alimony modification order retroactive to August 30, 2021, the date of the filing of the modification petition. ***See*** Appellant's Brief at 32. Husband argues that, in its Rule 1925(a) opinion, the trial court admitted the modification should have been retroactive to the filing of his petition. ***See id.*** at 32-33.

Pertinently, Section 3701(e) of the Divorce Code states the following:

**(e) Modification and termination.**--An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. **Any further order shall apply only to payments accruing subsequent to the petition for the requested relief.** Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S.A. § 3701(e) (emphasis added).

The relevant portion of the statute states that any order modifying alimony must be awarded for payments accruing after the filing of the petition for modification, not before. To that end, we interpret the use of the word "shall" in section 3701(e) as indicating the legislature's intent to make the filing date of the petition to modify the earliest date a modification could take effect. However, the statutory language does not explicitly require that the

modification order be applied to all payments accruing after the filing of the petition. Accordingly, the statute does not mandate any retroactive payments to the date of filing, and only permits the trial court, in its discretion, to apply the modification order to any date subsequent to the date of filing.[2]

Here, in its Rule 1925(a) opinion, without conducting any analysis, the trial court interpreted the relevant language of Section 3701(e) as intending any modification of an alimony award to automatically apply retroactively to the date of filing of the petition to modify alimony. **See** Trial Court Opinion, 8/22/22, at 3-4. However, as noted above, the trial court's interpretation is not supported by the plain language of the statute. Moreover, Husband does not provide his own analysis regarding the interpretation of the statutory language, and instead merely cites to the trial court's ultimate conclusion. **See** Pa.R.A.P. 2119(a) (noting that the argument must contain "such discussion and citation of authorities as are deemed pertinent."). In doing so, Husband ignores that Rule 1925(a) opinions are merely advisory and cannot alter the previously entered order. **See Youst v. Keck's Food Serv., Inc.**, 94 A.3d 1057, 1075 (Pa. Super. 2014); **see also Commonwealth v. Lobiondo**, 462

---

[2] A previous panel of this Court came to the same conclusion in an unpublished memorandum. **See Hawk v. Hawk**, 1749 WDA 2017 (Pa. Super. filed June 25, 2019) (unpublished memorandum at 17-18) (stating that in interpreting Section 3701(e), courts are constrained to award alimony "after the petition's filing and not before" and there is "no language in [Section] 3701(e) that mandates retroactivity" to the date that the petition was filed (citation omitted)). We may cite to unpublished memorandum decisions filed after May 2, 2019, for their persuasive value. **See** 210 Pa. Code § 65.37(B).

A.2d 662, 665 n.4 (Pa. 1983) (noting that a trial court's Rule 1925(a) opinion "is intended as an aid to the reviewing appellate court and cannot alter a previously entered verdict"). As the trial court's order modifying the alimony award was proper based upon the statutory language of Section 3701(e), we cannot conclude the trial court abused its discretion in not retroactively modifying the award to the date Husband filed the modification petition.

In his final claim, Husband contends the trial court abused its discretion in ordering him to maintain a $1 million life insurance policy payable to Wife as the sole beneficiary. *See* Appellant's Brief at 33. According to Husband, the life insurance policy payout is the equivalent of 400 months of alimony, which would provide Wife a significant windfall upon his death. *See id.* at 33-34. Husband argues that his life insurance requirement should be a reducing scale payment based on his life expectancy. *See id.* Husband further claims the trial court acknowledged that the amount of the policy may not be appropriate under the circumstances. *See id.* at 34.

"Upon the death of the payor party, the obligation to pay alimony shall cease unless otherwise indicated in an agreement between the parties or an order of court." 23 Pa.C.S.A. § 3707. Further, "[w]here it is necessary to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party." *Id.* § 3502(d).

Here, as part of the equitable distribution of marital assets and determination of alimony in 2011, the trial court directed Husband to obtain a life insurance policy of $1 million to provide for Wife's permanent alimony in the event of Husband's death. *See* Trial Court Opinion, 9/12/11, at 11. As noted above, the trial court found that Wife is "still unable to [meet] her reasonable monthly expenses without the additional money provided as alimony. It is, therefore, appropriate that Husband still maintain insurance." Trial Court Opinion, 8/22/22, at 4.

In this case, the trial court had determined that Husband's obligation to make alimony payments should not terminate upon his death. *See* 23 Pa.C.S.A. § 3707. Therefore, the trial court was authorized to require Husband to maintain the life insurance policy to secure the alimony obligations. *See id.* § 3502(d). Furthermore, while the trial court found there was "some question" about the amount of the policy, Trial Court Opinion, 8/22/22, at 4, Husband fails to raise any substantive argument in his brief regarding the amount of the policy and instead merely complains about the length of time Wife would be receiving alimony. *See* Pa.R.A.P. 2119(a). Notably, Husband is free to file a new petition to reduce the amount of the life insurance policy and further develop the record on this issue. *See* 23 Pa.C.S.A. § 3701(e). Nevertheless, based upon this record, we conclude the trial court did not abuse its discretion in ordering Husband to continue to maintain a life insurance policy of $1 million with Wife as the beneficiary.

Order affirmed.



Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2023