J-A23021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KAREN S. BURKHOLDER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT E. BURKHOLDER | : | |
| | : | |
| Appellant | : | No. 1290 WDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Fayette County Civil Division at No(s):
498 of 2021 G.D.

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  December 22, 2025**

Robert E. Burkholder ("Husband") appeals from the order denying Husband's exceptions and adopting the Report and Supplemental Report of the Special Hearing Officer. Husband argues the court erred in accepting the Officer's awards of equitable distribution and alimony. We affirm.

The parties separated in 2020, after 30 years of marriage. Karen S. Burkholder ("Wife") moved out of the marital residence and filed for divorce the following year. The court appointed a Special Hearing Officer for divorce, equitable distribution, and alimony. The Officer filed a Report, to which both parties filed exceptions. The court held argument and remanded the matter to the Officer. The Officer conducted a supplemental hearing and thereafter issued a Supplemental Report.

The Officer determined that the fair market value of the marital residence was $512,000, according to an appraisal. The appraisal amount

included $50,000 for the value of the Accessory Dwelling Unit ("ADU") located on the property. The Officer also found there was $215,548 left on a mortgage with Fifth Third Bank, and that the parties have $69,192 in debt from a Citizens Bank home equity loan. The court adjusted the balance of the Citizens Bank loan downward by $10,000, to $59,192, to account for money Wife spent to purchase her vehicle at the time of separation. The Officer then adjusted the value of the marital residence to $237,260, by subtracting the balances of the mortgage and adjusted Citizens Bank home equity loan.

The court awarded the marital residence, valued at $237,260, to Husband. The Officer found Husband also possessed $22,000 in other marital assets, including a baseball card collection, two lawn mowers, and an ATV, and awarded those assets to Husband.

The Officer found $56,377 in marital assets were possessed by Wife, consisting of life insurance and investment accounts, a hot tub, and Wife's vehicle. The Officer awarded these assets to Wife, and also found that Wife had already received $10,000 of marital assets, from the Citizens Bank home equity loan, to purchase her vehicle at the time of separation. The Officer ordered Husband to pay Wife $96,441, so that she would receive 50% of the marital assets.[1]

The Officer also ordered Husband to pay Wife an additional $25,000, "for her father's contribution to the marital real estate." Supplemental Special

---

[1] The Officer calculated the marital assets to be $325,637, and half of this amount to be $162,818.

Master's Report, filed 4/2/24, at 12 (unpaginated). The Officer found Wife's father paid for the construction of the ADU, which had increased the value of the marital residence by $50,000. The Officer observed that while Wife's father "intended to make a gift of the [ADU] to the parties," it was authorized to "consider the contribution of each party to the acquisition of assets." *Id.* at 5 (unpaginated).

The Officer also considered that Husband is a self-employed carpenter and was the sole owner of his carpentry business until he transferred half the ownership interest to the parties' adult son. The Officer noted that the parties agreed the business's assets and liabilities should remain Husband's, and the Officer awarded them to Husband. The Officer specifically assigned Husband the $44,586 balance on a First National Bank line of credit, finding it had been used by Husband for the business, rather than for marital property.

The Officer also considered a $380,943 Internal Revenue Service ("IRS") tax lien on the marital residence. The Officer found the lien appeared to be related to Husband's business income, and that Husband failed to provide any evidence regarding the details of the lien. It also found that the parties have an agreement with the IRS wherein Husband, or the parties' son, has paid $500 per month towards the lien, and both parties have forfeited all income tax returns until January 2027, at which time the lien will be discharged. The Officer noted that in forfeiting her tax returns, Wife has contributed an average of $285 per month to the lien for the years 2019-2022. The Officer assigned

the lien to Husband. The Officer also ordered Husband to refinance the mortgage and home equity debt within 12 months of satisfying the lien.

Finally, the Officer considered Wife's request for alimony. The Officer ordered Husband to pay Wife $847 monthly, and $100 per month towards any arrearage, until (1) the IRS lien is discharged; (2) Husband has refinanced the mortgage, (3) Husband has refinanced the Citizens Bank home equity loan, (4) Husband has refinanced the First National Bank loan, and (5) Husband has paid Wife the equitable distribution amount. Supplemental Special Master's Report at 8 (unpaginated).

Both parties filed exceptions. Following argument, the court entered an order denying the exceptions and adopting the Report and Supplemental Report. The court also entered a divorce decree.

Husband appealed.[2] He raises the following issues:

1. Did the trial court err in holding that the hearing officer did not err by attributing a twenty-five thousand ($25,000.00) dollar credit to Wife for the [ADU] when said hearing officer already considered this amount in determining the total value of the marital residence?

2. Did the trial court err in holding that the hearing officer did not err by reducing the Citizens Bank Home Equity Loan by the sum of ten thousand ($10,000.00) dollars for an advance to [Wife] for the purchase of an automobile?

3. Did the trial court err in holding that the hearing officer did not err in attributing the entire joint line of credit sum issued by First National Bank to [Husband]?

---

[2] Husband simultaneously moved for reconsideration, which the court denied.

4. Did the trial court err by concluding that the [h]earing [o]fficer did not err in failing to consider the party's First National Bank Line of Credit when it calculated the net value of the marital residence?

5. Did the trial court err in holding that the hearing officer did not err in concluding that [Husband] was solely responsible for the payment of the joint lien/debt asserted against the parties by the Internal Revenue Service?

6. Did the trial court err in holding that the hearing officer did not err in failing to consider the outstanding balance of the Internal Revenue Service lien when it calculated the net value of the marital residence?

7. Did the trial court err in holding that the hearing officer did not err in awarding alimony to [Wife]?

8. Did the trial court err in holding that the hearing officer did not err in awarding [Wife] alimony until the Internal Revenue Service lien had been satisfied in full?

Husband's Br. at 8-9 (suggested answers and trial court answers omitted).

Husband's first six issues go to the court's equitable distribution award. We review an equitable distribution scheme for an abuse of discretion. *Hess v. Hess*, 212 A.3d 520, 523 (Pa.Super. 2019). An abuse of discretion occurs where the court overrides or misapplies the law, or when its judgment is "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Id.* (citation omitted). We will not reweigh the evidence or decide credibility matters, where the court's determinations are supported by the record. *Goodwin v. Goodwin*, 244 A.3d 453, 458 (Pa.Super. 2020). Moreover, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because

- 5 -

the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Id.* (citation omitted). An appellant is required to show an abuse of discretion by clear and convincing evidence. **Hess**, 212 A.3d at 523.

Equitable distribution requires the court to "measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Goodwin**, 244 A.3d at 458 (citation omitted). The Equitable Distribution statute requires the court to divide marital assets equitably, after considering a list of factors:

### § 3502. Equitable division of marital property

**(a) General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a). An appellate court will assess "the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.[A.] § 3502(a) factors for consideration in awarding equitable distribution," rather than reverse the court based on its application of any single factor. *Hess*, 212 A.3d at 523 (citation omitted).

In his first issue, Husband argues the court erred in awarding Wife an additional $25,000 for the ADU. Husband argues that while the ADU was appraised at $50,000, this amount was included in the $512,000 valuation of the marital residence, of which Wife received 50%. Husband argues that awarding Wife a duplicative $25,000 for half of the ADU was error. He

contends that while Wife's father contributed money to construct the ADU, it was marital property and thus should have been divided evenly.

The $50,000 value of the ADU was included in the $512,000 valuation of the marital residence. By awarding Wife 50% of the value of the marital assets, which included the value of the ADU, the court awarded Wife half the value of the ADU ($25,000). In ordering Husband to pay Wife an additional $25,000, the court essentially awarded Wife the full value of the ADU ($50,000).

However, Husband fails to establish a clear abuse of discretion. Marital assets need to be divided equitably, not evenly. The court may consider each marital asset independently and apply a different percentage to each asset. *See* 23 Pa.C.S.A. § 3502(a). The court may also consider how those assets were acquired. *See id.* at § 3502(a)(7). Here, the Officer credited testimony that Wife's father had paid $80,000 for the construction of the ADU, which now creates rental income for Husband, and awarded Wife an additional $25,000 in recognition of her father's contribution to the acquisition of this asset. Thus, even though the ADU was marital property, the court did not abuse its discretion in awarding Wife the full value of the ADU, rather than dividing it evenly between the parties.

Husband next argues the court erred in finding the $10,000 Wife used to purchase her vehicle came from Citizens Bank home equity loan, rather than the First National Bank line of credit. He claims that Wife testified that she received the money from Husband's checking account, and Husband

testified that the First National Bank line of credit was tied to his checking account. He claims the court therefore erred in concluding the money came from the Citizens Bank home equity loan and reducing the balance of the loan (and thus, increasing the adjusted value of the marital residence) by $10,000.

The court credited the Officer's conclusions on this point. **See** Trial Court Opinion, filed 1/17/25, at 10. In the Officer's initial report, she stated Husband testified that Wife took $10,000 from the "Citizens Bank[] Home Equity Line of Credit," but that Husband did not provide documentation to substantiate where the money came from. Special Master's Report, filed 2/2/23, at 6. In her Supplemental Report, the Officer similarly stated Husband testified at the second conference that the money came from the "Citizens Bank joint line of credit." Supplemental Special Master's Report at 2 (unpaginated). While Husband contends his testimony indicates the money came from the First National Bank line of credit, rather than the Citizens Bank home equity loan, the notes of testimony from the Master's hearings were never filed. They are not in the certified record, and we therefore may not consider them. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006). Ultimately, because Husband failed to present substantiating documentation for the source of the money, he has failed to show the court abused its discretion by clear and convincing evidence in finding the money came from the marital loan, rather than the line of credit it assigned to Husband.

In his third and fourth issues, Husband argues the court erred in its treatment of the First National Bank line of credit. He argues the court should

not have attributed the entire debt to him and his business, because he testified this was a marital account, accrued during the marriage, listing the names of both parties, and used for marital expenses. He asserts the value of this debt should have reduced the value of the marital assets.

The court deferred to the Officer, who found that neither party offered specific evidence regarding the charges on this line of credit, but that there was evidence Husband used the line of credit after the parties' separation for business expenses. **See** Trial Ct. Op. at 10-12. In the Supplemental Master's Report, the Officer noted that Husband's business is one of the named owners of the First National Bank line of credit, and that the business and its liabilities were awarded/assigned to Husband. **See** Supplemental Special Master's Report at 9 (unpaginated). By failing to provide documentation regarding the use of the First National Bank line of credit, Husband failed to demonstrate by clear and convincing evidence that the court abused its discretion in assigning the debt to Husband.

In his fifth and sixth issues, Husband argues the court erred in assigning him the IRS lien, as he claims this was marital debt. **See** Husband's Br. at 39-40 (citing **Litmans v. Litmans**, 673 A.2d 382 (Pa.Super. 1996) and **Duff v. Duff**, 507 A.2d 371 (Pa. 1986)). Husband argues the lien accrued during the marriage and is named jointly to the parties. Husband points out that Wife testified she participated in the operation of the business, as a member of the business, enjoyed its profits, and entered into the agreement with the IRS to repay the lien. He argues that as marital debt, the court should have offset

- 10 -

the marital assets by the amount of the lien. He also contends that 23 Pa.C.S.A. § 3507 specifically provides that a tax lien should be deducted from the proceeds of the sale of the marital property.

In its opinion, the trial court notes there was conflicting testimony regarding the origin of the lien: Wife testified that Husband underreported income, and Husband testified the business had failed to issue 1099 forms to subcontractors. In Husband's exceptions to the initial Report, Husband raised the issue of whether the Officer erred in assigning him responsibility for the lien. However, in the Supplemental Report, the Officer found that at the second hearing, Husband had still failed to substantiate that the lien should be deemed a marital liability. The Officer found that the exhibits established the lien arose from the operation of the business. In deferring to the Officer, the trial court noted that the Officer determined Wife had been contributing to the monthly repayment of the lien by surrendering her income tax returns. The court found that assigning responsibility for the lien to Husband, considering the repayment plan in place with the IRS, and Wife's ongoing surrendering of her tax returns, was "both fair and reasonable." Trial Ct. Op. at 13. This was not a clear abuse of discretion. Section 3507 does not apply here, as it applies when a divorced party brings an action to have martial property sold.

Husband's last two issues challenge the court's alimony award. Husband argues the court failed to consider Wife's marital misconduct; that the parties' debt greatly exceeds their assets; that Wife has no minor children and is able

to secure full-time employment; that Husband suffered a broken back early in his life, which has made it hard for him to work as he ages; and, unlike Wife, Husband has no retirement or savings. He also argues that the court erred in awarding Wife monthly alimony until the IRS lien has been satisfied in full. He argues it is unlikely he will ever satisfy the lien, which as of the filing of his brief was $380,943.25, and according to Husband, will continue to increase. He contends the court should have ordered him to pay alimony for a specific duration of time.

"An award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award." ***Crocker-Fasulo v. Fasulo***, 292 A.3d 591, 596 (Pa.Super. 2023) (citation omitted). Alimony is ordered where it is necessary "to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met," and "only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." ***Id.***

In awarding alimony, the court is required to consider the following factors:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

- 12 -

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under [§] 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b). The court may order alimony "for a definite or indefinite period of time which is reasonable under the circumstances." *Id.* at

§ 3701(c). A court may later modify or terminate an alimony award based upon changed circumstances. *Id.* at § 3701(e).

Regarding alimony, the trial court opined as follows:

In her initial Report, the Hearing Officer stated that she considered all of the statutory factors set forth in Chapter 7 of the Pennsylvania Divorce Code. The Hearing Officer considered that this was a lengthy marriage, being over thirty years from the date of marriage until the date of separation. The Hearing Officer also considered the relatively similar age of the parties. The Hearing Officer noted that neither party has any extended education, and considered the relative health of both parties. The Hearing Officer considered that for the majority of the marriage, [Wife] contributed as a homemaker and stay at home mother, while the [Husband] supported the family financially by way of his carpentry skills. However, the Hearing Officer also took notice that each of the parties both benefitted from and contributed to the Business. The Hearing Officer also took notice that the parties' children are grown.

The Hearing Officer did, however, find that [Husband] has greater sources of income than [Wife]. The evidence presented at the hearings held before the Hearing Officer indicated that [Husband] currently receives the amount of $2,200.00 per month in Social Security Disability Benefits. In addition, although the Hearing Officer did not assign a value to the Business, she found that [Husband] continues to derive benefit therefrom, as the parties' son, Ryan Burkholder[,] pays the mortgage on the Marital Residence and on occasion, pays the Internal Revenue Service lien from the Business proceeds in the amounts of $3,100.00 and $500.00 per month[,] respectively. The Hearing Officer also found that [Husband] has an "EBT" card for food benefits, and also receives $600.00 per month in rental income from the lease of the [ADU] at the Marital Residence. Finally, the testimony at the hearings held before the Hearing Officer indicated that the [Husband] earns substantial income from gambling, totaling over $370,000.00 for the years 2019-2021. (See Hearing Officer's Report, page 10). By contrast, [Wife's] only source of income is the modest income which she receives from her employment with the Connellsville Area School District.

- 14 -

. . . It is readily apparent that the Hearing Officer considered the repayment of the Internal Revenue Service lien in determining her award of alimony to the [Wife]. The Hearing Officer took notice of the Internal Revenue Service lien and the $500.00 monthly payments when considering [Husband's] monthly expenses. The Hearing Officer also took notice of the fact that the parties' son, Ryan Burkholder[,] makes the monthly $500.00 payment at least on occasion, and noted that [Husband] did not testify that he is unable to pay his monthly expenses. Further, the Hearing Officer took notice that [Wife] has also contributed to the repayment of the Internal Revenue Service lien by way of the forfeiture of her income tax refunds. The Hearing Officer determined that on the average, [Wife] has paid the Internal Revenue Service lien in the amount of $285.00 per month. In light of the foregoing considerations, this Court finds that the Hearing Officer did not commit error by awarding alimony to [Wife] prior to the repayment of the Internal Revenue Service lien in full, and adopts the Hearing Officer's recommendation.

Trial Ct. Op. at 13-16.[3]

The court did not abuse its discretion. It considered the relevant factors under the statute, and awarded alimony based on the parties' differing incomes and earning capacities. Furthermore, the alimony award contemplates that alimony will not continue indefinitely. Rather, it will be terminated once the IRS lien is satisfied, which is estimated to occur in January 2027, and once Husband has paid the full amount of the equitable distribution order. In this sense, the alimony award is not in addition to the equitable distribution award, but meant to effectuate equitable distribution.

_____

[3] We note that the trial court opinion erroneously states that alimony was ordered at $747 per month. **See** Trial Ct. Op. at 6, 15. This error likely arises from the fact that in the initial Report, the Officer recommended Husband be ordered to pay alimony of $747 per month, plus $200 per month towards arrears. However, in the Supplemental Report, the Officer ordered Husband to pay Wife $847 monthly, and $100 per month towards any arrearage. **See** Supplemental Special Master's Report at 8.

We note the court specifically retained jurisdiction until the parties complied with all terms and conditions of the order, and that the statute provides the court may modify the award based on a change in circumstances.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  12/22/2025