J-S44018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARK CORRADO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAMMY CORRADO | : | |
| | : | |
| Appellant | : | No. 1789 EDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-01953

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED FEBRUARY 20, 2024**

Appellant Tammy Corrado (Mother) appeals from the order[1] granting Mother and Appellee Mark Corrado (Father) shared legal custody, Mother primary physical custody, and Father partial physical custody of their minor children E.C. and G.C. (collectively, Children).  Mother argues that the trial court erred by excluding evidence related to Father's alleged history of child abuse, failing to consider Father's alleged history of child abuse in its custody analysis, ordering Father to attend a limited period of anger management therapy, and designating Children's Paternal Grandmother as a custody supervisor.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother filed a separate appeal from the trial court's June 9, 2023 order holding Mother in contempt.  This Court docketed that appeal at 1788 EDA 2023, and we address that appeal in a separate memorandum.

The trial court summarized the facts and procedural history of this matter as follows:

The parties were married on November 8, 2009. They separated in July 2020 when Mother removed E.C. and G.C. from the [marital] home and moved to a new residence.

*        *        *

On August 28, 2019, Mother filed a [Protection From Abuse (PFA)[2] petition] against Father, on behalf of herself only, alleging that Father had been physically and mentally abusive to her. A hearing was a held and an eighteen (18) month final PFA order was entered [on September 5, 2019]. Less than two weeks later, Mother filed a petition to terminate the PFA [order] because Father had enrolled in counseling and anger management classes.

A year later, on July 28, 2020, Mother filed another PFA [petition] against Father, this time on behalf of herself and [Children], alleging that Father had physically abused the minor child, [E.C.] A temporary PFA order was entered on that same date. Thereafter, the final PFA hearing was continued numerous times due to a pending investigation of Father by the Office of Children and Youth (OCY) and pending criminal charges against Father for criminal harassment.

Ultimately, OCY made no finding of abuse by Father. Furthermore, the criminal harassment charges against Father were dropped. The PFA [matter] was then scheduled for a final hearing on January 20, 2021. On that date, an order was entered to address therapy between the parties and rescheduling the matter for a "status conference" on February 22, 2021.

At the February 22, 2021 status conference, a six month agreed PFA order was entered with no finding of abuse against Father. This order expired on August 22, 2021 without issue. Mother then filed a petition to extend the PFA on August 25, 2021 which was denied.

_____

[2] 23 Pa.C.S. §§ 6101-6122.

At the February 22, 2021 status conference, an agreed order was entered in the parties' custody case. This order provided Mother with a six month "civil stay away order" against Father. It directed the parties to use the "Our Family Wizard" (OFW) parenting application to communicate with each other. It further provided for three (3) weekly video calls between Father and [] Children. [The order also provided that Father could exercise custodial time upon agreement of the parties.] Finally, Father was directed to participate in anger management therapy.

\* \* \*

On October 11, 2022, Father filed a petition to modify custody. The basis for the modification was Father's completion of the [court-]ordered anger management classes, his belief that the video calls with [Children] were not improving their relationship and that he wanted to play a more active part in their lives after not seeing them in person for over two years.

On December 9, 2022, the parties appeared before the court's custody conciliator, Lenore Myers, Esquire [(the Conciliator)]. The Conciliator issued a report that included the following recommendations:

1. That Mother obtain a letter report from [] Children's therapist containing [] Children's diagnosis, prognosis, and plan for treatment including a plan for reunification with Father.

2. [] Children would probably benefit from reunification counseling. Without therapeutic intervention, the relationship between [] Children and Father will never be healed and [] Children will continue to re-experience the past trauma from their previous interactions with Father.

3. Mother and Father should also have a mental health evaluation.

On February 13, 2023, the parties appeared before the undersigned to address the Conciliator's recommendations. Despite the Conciliator's strong recommendation for therapeutic intervention in the report, there had been no effort to move forward on this point in the six (6) weeks since the date of the conciliation [conference]. Additionally, Mother failed to produce a letter from [] Children's therapist, despite the Conciliator's recommendation.

- 3 -

As a result, a temporary order dated February 15, 2023 was entered providing for Father and [] Children to participate in reunification counseling. . . .

\*     \*     \*

On February 22, 2023, Father filed a petition for contempt based on Mother's failure to comply with any provision of the February 15, 2023 order. . . .

\*     \*     \*

On March 9, 2023, the counsel and the parties appeared before the undersigned and an order was entered on March 10, 2023[,] directing Mother to comply with the order of February 15, 2023 or face the imposition of potential sanctions pursuant to 23 Pa.C.S. § 5232(g). The petition for contempt was scheduled for a proceeding on April 6, 2023 (which was later rescheduled for April 13, 2023).

Rather than comply with any item in the court's temporary orders of February 15, 2023, and March 10, 2023, Mother instead filed a notice of appeal to the Superior Court.[fn24]

> [fn24] As both orders were temporary, and therefore interlocutory, the Superior Court ultimately quashed Mother's appeal in an order dated April 17, 2023. [**See** Order, 747 EDA 2023, 4/17/23.]

Trial Ct. Op., 8/31/23, at 1-7 (some footnotes omitted and some formatting altered).

The trial court held a combined custody and contempt hearing on May 25, 2023. The trial court heard testimony from Father, Mother, and three other witnesses. At the conclusion of the hearing, the trial court held its decision under advisement. N.T., 5/25/23, at 232. On June 9, 2023, the trial court ordered that the parties would continue to share legal custody, granted Mother primary physical custody, and granted Father supervised physical custody for the first four periods of physical custody and unsupervised partial

- 4 -

physical custody thereafter. The trial court also directed Father to participate in four one-hour sessions of anger management therapy within thirty days of the date of the order and ordered Father and Children to participate in reunification therapy. That same day, the trial court entered an order holding Mother in contempt of the trial court's February 15, 2023 and March 10, 2023 orders, placing her on probation for six months, and directing Mother to pay Father $500 in counsel fees.

On July 7, 2023, Mother filed timely notices of appeal and Pa.R.A.P. 1925(a)(2)(i) statements from the June 9, 2023 custody order and the June 9, 2023 contempt order. On July 12, 2023, the trial court issued written findings of fact in support of the June 9, 2023 custody order.[3] The trial court

_____

[3] In its June 9, 2023 custody order, the trial court stated:

> Either party may make a written request to the chambers of the undersigned to issue formal findings of fact within five (5) business days of the entry of this order. In that event, findings will be issued prior to July 3, 2023 in accordance with *C.B. v. J.B.*, 65 A.3d 946 (Pa. Super. [] 2013).

Custody Order, 6/9/23, at 9 ¶22 (footnote omitted and some formatting altered). The trial court did not issue its findings of facts until after the deadline to file a notice of appeal. The trial court places the responsibility on Mother for the delay because Mother failed to request the trial court to issue written findings of fact and filed her notice of appeal on the penultimate day of the appeal period. *See* Trial Ct. Findings of Fact, 7/12/23, at 1 n.1; Trial Ct. Op. at 8-9.

23 Pa.C.S. § 5323(d) provides, "[t]he court shall delineate the reasons for its [custody] decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). The *C.B.* Court held that Section 5323(d) "requires the trial court to set forth its mandatory assessment of the sixteen factors prior
*(Footnote Continued Next Page)*

subsequently issued a Rule 1925(a) opinion addressing Mother's claims in both appeals.

In her appeal from the trial court's custody order,[4] Mother raises seven issues for our review, which we reorder as follows:

1. Whether the trial court abused its discretion or committed an error of law by issuing its June [9], 2023 order[] after the May 25, 2023 trial when the trial court suppressed any evidence, physical or oral, pertaining to Father's physical and mental abuse of [] Children, which was allowed in a prior court matter, specifically a [PFA] hearing, where the result

_____

to the deadline by which a litigant must file a notice of appeal." **C.B.**, 65 A.3d at 955. Additionally, this Court has concluded that a trial court "erred by failing to comply with **C.B.** and instead making its timely assessment of the statutory factors conditional upon either party's request." **R.D.S. v. B.A.B.**, 121 MDA 2023, 2023 WL 7293868, at *4 n.3 (Pa. Super. filed Nov. 6, 2023) (unpublished mem.); **see also** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). Therefore, we disagree with the trial court that Mother's decision to file a notice of appeal without first requesting formal findings of fact prevented the trial court from issuing those findings in a timely fashion. We acknowledge that **C.B.** affords trial courts some flexibility in addressing the statutory factors, but we reiterate that Section 5323(d) "**compels** the trial court to perform its **mandatory** function [of explaining its assessment of the sixteen factors] early enough in the [appellate] process to permit litigants to move forward, equipped with the information demanded by the legislature." **C.B.**, 65 A.3d at 955 (emphases added); **see also R.D.S.**, 2023 WL 7293868, at *4 n.3.

[4] As previously noted, Mother separately appealed from the contempt order. Here, Mother filed the same appellate brief at both appeal docket numbers. Three of the issues that Mother raised in her appellate brief relate to her appeal from the contempt order. Therefore, they are not cognizable in the instant appeal and will be addressed in a separate memorandum. **See, e.g.**, **M.W. v. S.T.**, 196 A.3d 1065, 1069 n.6 (Pa. Super. 2018) (declining to review the grandmother's appeal from denial of her petition to intervene in dependency case where the grandmother only filed a notice of appeal from the order dismissing her complaint for custody).

was a final [PFA] order against Father and keeping [] Children out of []his custody, thereby protecting them as doing so is in the best interests of [] Children?

2. Whether the trial court abused its discretion or committed an error of law by issuing its June [9], 2023 order[], . . . where Father had previously abused [] Children and the trial court refused to hear evidence and testimony of the same, even though hearing such evidence and testimony would be crucial towards deciding custody utilizing the 16 enumerated factors . . . specifically 23 Pa.C.S. § 5328(a)(2), pertaining to the physical and mental well-being of [] Children, such that Father is still a harm to [] Children and granting Father custody would lean heavily against the best interests of [] Children, . . ?

3. Whether the trial court abused its discretion or committed an error of law by issuing its June [9], 2023 order[] and denying Mother the ability to produce any evidence or testimony of Father's abuse of Mother that [] Children at issue herein were traumatized by witnessing said abuse and thereby allowing Father's modification of the custody order without more, such that [] Children's best interests, as required by Pennsylvania law, were not properly taken into consideration?

4. Whether the trial court abused its discretion or committed an error of law by issuing the June [9], 2023 order[], whereby said orders modified the parties' existing custody order, including custodial time, and elements of parental contact with . . . Children, without hearing relevant testimony or evidence pertaining to . . . 23 Pa.C.S. § 5328(a)(2), where issues of child abuse were involved in the instant matter?

5. Whether the trial court abused its discretion or committed an error of law by issuing the June [9], 2023 order[], without allowing testimony or evidence of the [PFA] order previously set forth against Father for abuse of the parties' Children, thereafter substantially modifying the parties' existing custody order, and elements of parental contact with . . . Children, and without reviewing in detail said testimony or evidence pertaining to Father's abuse of [] Children, which could have directly impacted the second and most important factor of the 16 enumerated child custody factors, 23 Pa.C.S. § 5328(a)(2), . . . ?

6.  Whether the trial court abused its discretion or committed an error of law by issuing its June [9], 2023 order[], part of which requires Father to attend anger management therapy, but said order wrongfully places a time limit of thirty (30) days on said therapy and further does not require said therapist to be made aware of Father's previous [PFA] order, whereby Father had physically abused [] Children, and in doing so, the trial court has wrongfully and improperly placed [] Children in harm's way by placing itself in the shoes of a mental health provider without any basis for doing so, whatsoever?

7.  Whether the trial court abused its discretion or committed an error of law by issuing its June [9], 2023 order[] by allowing for Paternal Grandmother to be a supervisor of Father's custodial time when [] Children at issue in the matter have never met or know of Paternal Grandmother, such that introducing [] Children into such an environment is a threat to [] Children's stability under the circumstances and would not be in [] Children's best interests . . . ?

Mother's Brief at 18-24 (some formatting altered).[5]

### Father's Request to Dismiss the Appeal

Initially, we consider Father's request to dismiss Mother's appeal from

the June 9, 2023 custody order on the basis that Mother lacks standing under

_____

[5] In her reply brief, Mother argues that the trial court erred by failing to place its findings on the record when it entered its June 9, 2023 custody order. Mother's Reply Brief at 5-9. A party may not raise new issues in a reply brief for the first time. **See Reginelli v. Boggs**, 181 A.3d 293, 307 n.15 (Pa. 2018). Further, Mother did not include this issue in her Rule 1925(b) statements. Therefore, this issue is waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also R.D.S.**, 2023 WL 7293868, at *4 n.3 (concluding that the appellant-father was not entitled to relief based on the trial court's failure to comply with 23 Pa.C.S. § 5323(d) and **C.B.** because the father did not raise the issue in his Rule 1925(b) statement). Nevertheless, as noted in footnote 3 above, we disapprove of the procedure that the trial court applied here in that it is incompatible with Section 5323(d) as interpreted by this Court in **C.B.**

Pa.R.A.P. 501. Father's Brief at 21-23.[6] Specifically, Father argues that Mother was the prevailing party at the custody hearing because the trial court's June 9, 2023 custody order awarding Father supervised physical custody and requiring Father to attend anger management is consistent with Mother's testimony about her preferred custody arrangements. *Id.* at 22-23. Father contends that Mother was the prevailing party, and not an aggrieved party, because the custody order did not adversely affect Mother's interests. *Id.* Therefore, Father concludes that Mother lacks standing to appeal the custody order under Pa.R.A.P. 501.

Mother responds that she has standing to appeal the custody order because she has an interest in the custody of Children and the order impacts her custodial rights. Mother's Reply Brief at 16.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017) (citations omitted).

Rule 501 states that "[e]xcept where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501.

"A party is 'aggrieved' when the party has been adversely affected by the decision from which the appeal is taken. A prevailing party is not 'aggrieved' and therefore, does not have standing to appeal an order that has

---

[6] Father does not contest Mother's standing to appeal the contempt order. *See* Father's Brief at 21 n.11.

been entered in his or her favor." ***Ratti v. Wheeling Pittsburgh Steel Corp.***, 758 A.2d 695, 700 (Pa. Super. 2000) (citations omitted).

In the custody context, this Court has concluded that a mother was not an aggrieved party where the trial court sustained the mother's preliminary objections and dismissed the custody complaint filed against her. ***L.D.G. v. T.L.W.***, 68 WDA 2020, 2020 WL 6806214, at *1 (Pa. Super. filed Nov. 19, 2020) (unpublished judgment order) (dismissing the mother's appeal). However, this Court has heard appeals in cases filed by parties who were awarded primary physical custody of their children without questioning if those appellants were the "prevailing party" or if they were "aggrieved" by the orders awarding them primary physical custody. ***See, e.g.***, ***S.C.B. v. J.S.B.***, 218 A.3d 905, 908, 911-12 (Pa. Super. 2019); ***C.M. v. M.M.***, 215 A.3d 588, 589-91 (Pa. Super. 2019); ***R.L.P. v. R.F.M.***, 110 A.3d 201, 207 (Pa. Super. 2015).

In ***C.M.***, the mother appealed from a custody order which increased the father's custodial time and removed the supervision requirement from the father's periods of partial physical custody. ***C.M.***, 215 A.3d at 590. This Court concluded that the trial court abused its discretion in altering the custody arrangement, vacated the order, and remanded for further proceedings. ***Id.*** at 593-94.

Instantly, the procedural history of this case is more akin to that of ***C.M.*** than ***L.D.G.*** Here, the February 22, 2021 custody order provided that Father could exercise partial physical custody upon agreement of the parties. The

June 9, 2023 custody order granted Mother primary physical custody and granted Father supervised physical custody for Father's first four periods of physical custody followed by unsupervised partial physical custody of Children. *Compare* Custody Order, 6/9/23, at 3-5 ¶¶6-8 *and C.M.*, 215 A.3d at 590 *with L.D.G.*, 2020 WL 6806214, at *1. Therefore, we conclude that Mother is an aggrieved party and has standing to appeal the trial court's June 9, 2023 custody order because the custody order increases Father's custodial time.[7] *See* Pa.R.A.P. 501.

## Evidentiary Issues

In her first three issues,[8] Mother argues that the trial court erred by excluding evidence of Father's past abuse of Mother and Children. Mother's

_____

[7] We also note that the courts of this Commonwealth have repeatedly explained that "[t]he primary focus in any custody case is the best interests of the child." *C.M.*, 215 A.3d at 591; *see also R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019) (stating that "the paramount concern in child custody cases is the best interests of the child" (quoting *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018)). If this Court were to conclude that the party which has primary physical custody lacks standing to appeal from a final custody order, then that order would never be subject to appellate review if the opposing party chose not to appeal. We reject Father's interpretation of Rule 501 because it creates an absurd and unreasonable result. *See* Pa.R.J.A. 109(a) (providing that when interpreting a rule adopted by our Supreme Court, we presume that the Supreme Court "does not intend a result that is absurd, impossible of execution, or unreasonable").

[8] While Mother identifies seven issues for our review in this appeal from the custody order in her statement of questions presented, the argument section of her brief pertaining to custody is only divided into five sections: (1) whether the trial court erred by failing to consider Father's alleged history of child abuse in its custody analysis; (2 and 5) whether the trial court erred by excluding evidence of Father's alleged history of abuse; (3) whether the trial
*(Footnote Continued Next Page)*

- 11 -

Brief at 47-52, 57-59.[9]  Specifically, Mother contends that the trial court did

not allow her to present "nanny cam footage" or photographs depicting

Father's abuse of Children or the results thereof.  *Id.* at 51 (citing N.T.,

5/25/23, at 107, 155); *see also id.* at 32 n.13, 33-34.  Mother claims that

the trial court erred by excluding that evidence because in a custody case, a

trial court is required to consider present and past abuse by a party and

whether there is a continuing risk of harm.  *Id.* at 49-50 (citing, *inter alia*, 23

Pa.C.S. § 5328(a)(2)); *see also id.* at 58-59.  Mother further contends that

the trial court erred by failing to ensure that a complete record was made at

the custody hearing.  *Id.* at 51 (citing *Moore v. Moore*, 634 A.2d 163, 167

(Pa. 1993)); *see also id.* at 39 (citing *Costello v. Costello*, 666 A.2d 1096,

1098 (Pa. Super. 1995)).  Mother argues that the trial court's error resulted

_____

court erred by ordering Father to attend a limited period of anger management
therapy; and (4) whether the trial court erred by designating Paternal
Grandmother as a custody supervisor.  Mother's Brief at 29-60.  We note that
the Pennsylvania Rules of Appellate Procedure require that the argument
section of the brief be divided into as many parts as there are questions to be
argued.   Pa.R.A.P. 2119(a).   Failure to do so may result in waiver.
*Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042
(Pa. Super. 2015).  While we do not condone Mother's failure to comply with
the Rules of Appellate Procedure, we find that our ability to render meaningful
appellate review is not hindered; therefore, we decline to find waiver on this
basis.  *Id.*

[9] We note that Mother's argument with respect to the trial court's evidentiary
rulings excluding evidence related to Father's past abuse of Mother and
Children overlaps with her argument about the trial court's analysis of the
statutory custody factors.  **Compare** Mother's Brief at 47-52, 57-59 **with**
Mother's Brief at 29-41.  However, we limit our review in this section  to the
trial court's evidentiary rulings.

- 12 -

in the trial court awarding Father partial physical custody of Children.  *Id.* at 51.  Therefore, Mother concludes that the trial court abused its discretion in excluding this evidence.

This Court has explained:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law[.]  A trial court has wide discretion in ruling on the relevancy of evidence and its ruling will not be reversed absent an abuse of discretion.

*K.T. v. L.S.*, 118 A.3d 1136, 1165 (Pa. Super. 2015) (citation omitted).

We will not find an abuse of discretion merely because a reviewing court would have reached a different conclusion.  Rather, appellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will.

*R.L.*, 209 A.3d at 395 (citations omitted and formatting altered).

Additionally, this Court has explained that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or unduly prejudicial to the complaining party." *K.B. v. Tinsley*, 208 A.3d 123, 130 (Pa. Super. 2019) (citation omitted and formatting altered); *see also Renninger v. A & R Mach. Shop*, 163 A.3d 988, 999 (Pa. Super. 2017) (explaining that "[a]n evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the fact-finder's judgment" (citation omitted and formatting altered)).

- 13 -

The Pennsylvania Rules of Evidence state that unless "otherwise provided by law," "[a]ll relevant evidence is admissible," while "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Our Supreme Court has also explained that "[i]n the context of a custody case a trial court must ensure that as full and complete a record as possible is created when a decision as important as the welfare of a child is at issue." **Moore**, 634 A.2d at 167; **cf. Wilson v. Smyers**, 284 A.3d 509, 515 (Pa. Super. 2022) (concluding that the trial court did not err in restricting mother from presenting additional testimony about her relationship with the child's deceased father during a hearing on the paternal grandmother's petition for partial physical custody because the mother had "ample opportunity" to explain the "traumatic impact [that the] father's death had on her" and further testimony about that topic "was superfluous and not particularly relevant to either [the] mother's relationship with the child, nor the child's relationship with [the paternal] grandmother" (some formatting altered)).

Here, the trial court explained:

Initially, it should be reinforced that the entire theme of Mother's case, throughout every step of the current proceedings, was entirely focused on abuse that allegedly occurred up to three years ago. Unlike Father (and the court), Mother demonstrated absolutely zero interest in a "solution based" approach as to how best to proceed to go forward to reunite Father with [] Children. The current proceedings were devoted to custody as Father had not seen [] Children in-person in nearly three years. The previous allegations of abuse had already been addressed during prior PFA proceedings, **and** investigations by [OCY] and law enforcement back in 2020.

Notably, give[n] Mother's entire focus on just one issue, there was extremely limited testimony from Mother regarding any of the other 15 Factors (aside from Factor 2). Mother's testimony was directed almost solely to the parties['] toxic history as a couple and the events that led her to filing the PFA[ petitions].

Mother testified about Father's violent behavior towards her throughout their relationship. She also made accusations of Father hitting [] Children. All of this testimony goes back in time to 2020 and before.

While Father did acknowledge hitting [E.C.] back in 2020, there was never a finding of abuse against Father. [N.T., 5/25/23, at 68. OCY] performed two investigations, both of which resulted in no finding of abuse. [N.T., 5/25/23, at 26; Exhibits F-1, F-2.] Father was never convicted of any crime related to his alleged actions. If Mother truly believed that "abuse" was such a significant factor, which would then justify Father not having any meaningful contact with [] Children for an extended time period, she should have insisted on litigating this issue two years ago in PFA court. Instead, Mother agreed to a six-month PFA [order] **with no finding of abuse**.

In response to Mother's concerns on this issue, the court received Mother's testimony about the accusations of abuse she alleged Father committed prior to their 2020 separation. She was not, however, permitted to submit photographs into the record of the proceedings which were part of the July 2020 PFA action. As noted *supra*, that matter led to an agreed PFA order for six months with no finding of abuse. In addition, Mother's allegations were

- 15 -

investigated by both [OCY] and law enforcement. In both instances, there were no findings of abuse.

Trial Ct. Op. at 15-17 (footnotes omitted, some formatting altered, and emphases in original).

Following our review of the record, we agree with the trial court that the proffered evidence[10] was cumulative of Mother's testimony about Father's anger issues and his abusive behavior towards Mother and Children. **See id**.; **see also** N.T., 5/25/23, at 98-102, 107-08, 123-24, 139, 155. Therefore, we discern no abuse of discretion by the trial court in excluding this additional evidence. **See K.T.**, 118 A.3d at 1165; Pa.R.E. 403; **see also Wilson**, 284 A.3d at 515.

Further, we conclude that Mother has failed to demonstrate that she suffered prejudice as a result of the trial court's evidentiary rulings. As discussed further below, Mother testified that she refused to disclose the name of the Children's elementary school to Father because she was afraid that Father would take Children from their school, but the trial court concluded that her testimony was unreasonable and not credible. **See** Trial Ct. Findings of Fact at 11-12. Additionally, the trial court determined that Mother had engaged in a campaign of alienating Children against Father. **See id.** at 14-16; Trial Ct. Op. at 17-18. Therefore, even if the trial court abused its

_____

[10] We note that the trial court did not exclude a **video** that Mother attempted to offer into evidence, rather the trial court sustained Father's objection to Mother testifying about her observations of what the video depicted. **See** N.T., 5/25/23, at 104-07.

- 16 -

discretion in excluding Mother's proffered evidence, we conclude that those evidentiary rulings did not affect the outcome of the proceedings. ***See K.B.***, 208 A.3d at 130. For these reasons, Mother is not entitled to relief on these claims.

## Custody Factors

In her fourth and fifth issues, Mother argues that the trial court erred in its analysis of the custody factors because the trial court refused to consider evidence of Father's past abuse and the continued risk of harm to Children and Mother. Mother's Brief at 29-41;[11] Mother's Reply Brief at 21-22. Specifically, Mother argues that the trial court erred by "minimiz[ing Mother's] fear for herself and [] Children" because the allegations of abuse occurred three years ago. Mother's Brief at 40. Mother contends that the trial court also erred by "minimizing [the] weight and significance" of the 2021 PFA order because the trial court observed that the PFA order was entered by agreement without a finding of abuse. ***Id.*** at 37-38 n.16; ***see also*** Mother's Reply Brief at 21. Mother asserts that "[w]hile there was no admission of guilt [in the agreed upon PFA order], there was no denial either." Mother's Brief at 38 n.16. Mother additionally asserts that the trial court failed to consider that PFA orders can be entered by agreement to "allow[] victims to avoid the pain

---

[11] As noted above, Mother's argument regarding the trial court's custody determination overlaps with her claims about the trial court's evidentiary rulings. ***Compare*** Mother's Brief at 29-41 ***with*** Mother's Brief at 47-52, 57-59. We limit our review in this section to the trial court's custody determination.

of testifying before a judge." ***Id.***; ***see also*** Mother's Reply Brief at 21 (stating that the entry of a PFA order by agreement "provides protection to an abuse victim without making that victim suffer the trauma of a full hearing"). Mother also claims that because the trial court found that Father admitted to hitting E.C. in 2020, this was an acknowledgement of abuse by Father that "should automatically have been a determinative factor for the trial court." Mother's Brief at 39-40. For these reasons, Mother concludes that the trial court abused its discretion in making its custody determination.[12]

In cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> This Court reviews a custody determination for an abuse of discretion. We will not find an abuse of discretion merely because a reviewing court would have reached a different conclusion. Rather, appellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either

---

[12] Mother additionally argues that the trial court erred in entering its February 15, 2023 and March 10, 2023 orders without first hearing evidence. Mother's Brief at 35-36. As noted above, Mother previously appealed from these orders, and this Court quashed that appeal as interlocutory. ***See*** Order, 747 EDA 2023, 4/17/23. Mother contends that "[t]he June [9], 2023 custody order [is] built upon the faulty foundation laid by the February 15, 2023 order, laying permanent custody structures upon unexcavated ground." Mother's Brief at 36. Mother has waived this claim because she did not raise it in her Rule 1925(b) statement or in the statement of questions involved. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"), 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

manifestly unreasonable or the product of partiality, prejudice, bias or ill will.

Further, when this Court reviews a trial court's best interests analysis in custody matters, our scope of review is broad, but we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. Importantly, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses. We can only interfere where the custody order is manifestly unreasonable as shown by the evidence of record.

*R.L.*, 209 A.3d at 395 (citations omitted and formatting altered)).

"The parties cannot dictate the amount of weight the trial court places on evidence." *C.M.*, 215 A.3d at 591 (citations omitted). Further, abuse of discretion is a deferential standard of review, and it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Wilson*, 284 A.3d at 520 (citation omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328(a), 5338(a); *see also R.L.*, 209 A.3d at 395. "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *R.L.*, 209 A.3d at 395 (citations omitted).

Section 5328(a) provides, in relevant part, as follows:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

* * *

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

* * *

(11) The proximity of the residences of the parties.

* * *

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

* * *

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[13]

This Court has explained that "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors

_____

[13] To the extent that Mother has cited 23 Pa.C.S. § 5303 in her brief in support of her arguments, we note that the General Assembly repealed Section 5303 and replaced it with present version of the Child Custody Act on January 24, 2011. **See** Act of Nov. 23, 2010, P.L. 1106, No. 112, § 1.

are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." **Id.** at 339 (citation omitted).

The PFA Act provides, in relevant part, that "the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa.C.S. § 6108(a). This Court has held that

> the term "consent" ordinarily connotes acquiescence without reference to admissions. Consequently, the plain and unambiguous language of the PFA[ Act] merely indicates that it authorizes and enforces consent-based protective orders. In light of the absence of any reference to the necessity that such orders be accompanied by admissions of abuse, we find the matter excluded from the statute.

**Commonwealth v. Nelson**, 690 A.2d 728, 731 (Pa. Super. 1997) (citations omitted); **see also Lower Frederick Twp. v. Clemmer**, 543 A.2d 502, 510 (Pa. 1988) (**Clemmer**) (stating that "[a] consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding the parties thereto to the terms thereof" (citation omitted)).

Here, the trial court thoroughly addressed Mother's claims regarding Father's history of anger and abuse, as well as Mother's ongoing efforts at parental alienation. **See** Trial Ct. Findings of Fact at 5-7, 9-16; Trial Ct. Op.

at 15-18. Essentially, Mother invites this Court to reweigh factual evidence presented at the hearing and to reweigh the Section 5328 factors, which this Court will not do. **See Wilson**, 284 A.3d at 520 (stating that it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility" (citation omitted); **M.J.M.**, 63 A.3d at 339 (explaining that the trial court, as the finder of fact, has the discretion "to determine which factors are most salient and critical in each particular case" (citation omitted)).

We are cognizant that the trial court must give weighted consideration to factors which affect the safety of Children. **See** 23 Pa.C.S. § 5328(a). However, contrary to Mother's argument, there is no bright-line rule that the courts must apply when there is evidence that party has abused a child or other party in the past. **See R.L.**, 209 A.3d at 395 (explaining that the best interests of the child must be determined on a case-by-case basis); **M.J.M.**, 63 A.3d at 339 (explaining that as the finder of fact, the trial court determines which custody factors are most important in each case). Further, there is no dispute that the February 22, 2021 PFA order was entered **by consent** of the parties **without an admission of abuse**. Contrary to Mother's claims, this PFA consent order[14] does not constitute evidence of abuse or a judicial determination that Father abused Children. **See Nelson**, 690 A.2d at 731; **see also Clemmer**, 543 A.2d at 510.

---

[14] We note that the September 5, 2019 PFA order against Father was entered after a hearing and Father acknowledged that the PFA court found that he had abused Mother. **See** N.T., 5/25/23, at 22.

Finally, we note that although Mother testified regarding her fear that Father would attempt to remove Children from their school if she disclosed the name of the Children's school, the trial court concluded that her testimony was not credible. **See** Trial Ct. Findings of Fact at 11. Because we discern no abuse of discretion in the trial court's weighing of the custody factors, we affirm on the basis of the trial court's opinion. **See R.L.**, 209 A.3d at 395; **see also** Trial Ct. Op. at 15-18.

**Anger Management Course**

In her sixth issue, Mother argues that the trial court erred by ordering Father to attend thirty days of anger management counseling. Mother's Brief at 52-54. Specifically, Mother contends that the trial court should not have imposed the thirty-day limit, which she asserts "is not enough time for meaningful change to occur" and "ties the hands of an established medical professional from being able to definitively state whether or not [Father] made sufficient progress . . . ." **Id.** at 53. Mother acknowledges that there is "no standard requirement for a duration of time for an anger management class" but notes that in **In re R.J.T.**, 9 A.3d 1179 (Pa. 2010), the father completed seventeen weeks of anger management. **Id.**

Here, Mother is asking this Court to conclude that the trial court's order requiring Father to attend additional anger management therapy[15] was

_____

[15] Specifically, the trial court ordered Father to complete four one-hour anger management therapy sessions within thirty days of the date of the custody order. **See** Custody Order, 6/9/23, at 1-2 ¶4.

inadequate to address Father's history of anger issues. As previously stated, this Court will not reweigh the evidence and cannot substitute our judgment for that of the finder of fact. **See Wilson**, 284 A.3d at 520. Therefore, we affirm based on the trial court's analysis of this issue. **See** Trial Ct. Op. at 17, 20-21.

### Custody Supervisor

In her final issue in her appeal from the custody order, Mother argues that the trial court erred in by designating Children's Paternal Grandmother as one of the three individuals who may supervise Father's periods of supervised physical custody. Mother's Brief at 55-56. Specifically, Mother contends that the same reasons the trial court relied on to conclude Paternal Grandmother was a suitable custody supervisor also "threaten[] the safety and security of [] Children." **Id.** at 56.

Again, Mother is essentially asking this Court to reweigh the evidence and reassess Paternal Grandmother's credibility.[16] This Court will not substitute its judgment for that of the trial court, which was the finder of fact. **See Wilson**, 284 A.3d at 520. Therefore, we affirm based on the trial court's analysis, including its express finding that Paternal Grandmother's testimony

---

[16] We also note that Mother failed to cite any legal authority in support of her argument regarding this claim, which is required by the Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a), (c). While Mother's failure to develop her argument with citation to and discussion of relevant legal authority is grounds to find waiver, we decline to do so because this claim is straightforward. **Cf. In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (finding claims that were not sufficiently developed in the appellant's brief to be waived).

was credible.  **See** Trial Ct. Op. at 22-23.  Therefore, Mother is not entitled to relief on this claim.

For the reasons stated above, we affirm the trial court's order.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:  2/20/2024