690 A.2d 728

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Clarence NELSON.**

Superior Court of Pennsylvania.

Argued Dec. 19, 1996.

Filed March 3, 1997.

350

Garrett A. Taylor, Assistant District Attorney, Erie, for Commonwealth, appellant.

Clarence Nelson, appellee, pro se.

Before DEL SOLE, POPOVICH and HESTER, JJ.

HESTER, Judge.

The Commonwealth appeals from the order entered in the Court of Common Pleas of Erie County on April 26, 1996,

wherein the court found appellee, Clarence Nelson, not guilty of indirect criminal contempt and dismissed the prosecution.[1] For the reasons set forth below, we are constrained to reverse and remand the matter for further proceedings.

The procedural history of this case may be summarized as follows. On July 3, 1995, after appellee apparently attempted to force his way into the residence of ex-girl friend Mella Butts, see Commonwealth's brief at 4; N.T., 7/13/95, at 2, the trial court issued a temporary order pursuant to the Protection From Abuse Act (PFAA), 23 Pa.C.S. § 6101 et seq. Ten days later, appellee consented to the entrance of a final protective order. That order, which provided it would remain effective for a one-year period, directed appellee to remain at least 100 yards from Ms. Butts and prohibited him from hitting, striking, threatening, abusing, or harassing her. In addition, the order provided that any violation of its terms could lead to the arrest and prosecution of appellee for indirect criminal contempt.

On April 6, 1996, appellee allegedly violated the protective order and was charged with indirect criminal contempt. At the subsequent contempt hearing, the trial court interrupted the testimony of Ms. Butts, questioned the parties regarding the basis of the consent order, and indicated sua sponte that the order was improper since it was unsupported by an

1. Although the contested order indicates that appellee was found not guilty of the contempt charge, this portion of the order does not reflect either the notes of testimony or the trial court's belief as to what actually occurred. Our examination of the record reveals that the Commonwealth was not afforded an opportunity at trial to make a complete evidentiary presentation and that the court made no finding on the issue of guilt at the time. To the contrary, it demonstrates that the court interrupted the Commonwealth's presentation before the preliminary questioning of its initial witness was completed, initiated a discussion relating to matters forming the basis of the prosecution, and ordered the dismissal of the contempt charge. See Notes of Testimony ("N.T."), 4/23/96, at 7. Furthermore, the trial court's Pa.R.A.P.1925 opinion characterizes the appeal as relating to the dismissal of the charge rather than from an acquittal. See Trial court opinion, 6/25/96, at 1. Thus, we treat the appeal as involving only the dismissal of the prosecution. See Commonwealth v. Wallace, ―― Pa.Super. ――, 686 A.2d 1337 (1996) (holding that a trial court ruling of not guilty due to the failure of the complainant to appear amounted to a dismissal).

admission of abuse. Appellee then requested the dismissal of the action. The court subsequently entered the contested order and attempted to explain its decision by indicating, among other things, that a form given appellee prior to the disposition of the PFAA proceedings precluded the prosecution. This timely appeal followed.

Preliminarily, we note that the trial court impinged upon the role of the litigants by relying upon issues raised sua sponte to dismiss the proceedings. The court's conduct in this regard is sufficient, by itself, to warrant reversal. *See Commonwealth v. Taylor*, 424 Pa.Super. 181, 622 A.2d 329 (1993); *Commonwealth v. Murphy*, 305 Pa.Super. 246, 451 A.2d 514 (1982). Nevertheless, we will address the remaining issues advanced by the Commonwealth, which concern the enforceability of the protective order.

The Commonwealth contends that the trial court's failure to enforce the protective order violated the coordinate jurisdiction rule. We disagree. According to the coordinate jurisdiction rule, a rule now encompassed within the rubric of the law of the case doctrine, a judge of coordinate jurisdiction sitting in the same case should not overrule a colleague's decision in the absence of extraordinary circumstances such as the determination that the prior decision clearly was erroneous and would create manifest injustice if followed. *See Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). While our review of the record reveals a connection between the PFAA and the contempt proceedings, it is clear that the latter did not constitute a mere continuation of the former. Rather, the two actions were distinct. The PFAA proceedings were initiated in an effort to stop the perpetration of abuse and were civil in nature. *See Weir v. Weir*, 428 Pa.Super. 515, 631 A.2d 650 (1993) (Pennsylvania Rules of Civil Procedure applicable to proceedings under the PFAA). The indirect criminal contempt action, however, was criminal in nature and amounted to an effort to seek appellee's punishment for the violation of the protective order. *See Crozer–Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989). Accord-

ingly, we find that the coordinate jurisdiction rule has no impact upon the enforceability of the protective order.

■ Having determined the inapplicability of the coordinate jurisdiction rule, we turn to the primary issues raised by the Commonwealth. First, the Commonwealth contends that consent-based protective orders unaccompanied by admissions of abuse are both authorized and enforceable under the PFAA. This contention raises a matter of first impression.

According to 23 Pa.C.S. § 6108(a), which sets forth the general rule regarding the relief available in an action instituted under the PFAA, "[t]he court may grant any protection order or approve any consent agreement to bring about the cessation of abuse...." With respect to enforceability, 23 Pa.C.S. § 6114(a) provides that "[w]here the police or the plaintiff have filed charges of indirect criminal contempt against a defendant for violation of a protection order issued under this chapter or a court-approved consent agreement, the court may hold the defendant in indirect criminal contempt...." Neither those subsections nor any other provision of the PFAA specifically indicates that consent-based agreements must be accompanied by admissions of abuse.

■ It is clear that the words of a statute must be construed according to their plain meaning and that the letter of an unambiguous statutory provision is not to be discarded under the pretext of pursuing its spirit. *See Commonwealth v. Reeb*, 406 Pa.Super. 28, 593 A.2d 853 (1991). Moreover, according to the general principles of statutory construction, matters not included in a provision shall be deemed excluded. *See Commonwealth v. DeFusco*, 378 Pa.Super. 442, 549 A.2d 140 (1988).

■ Instantly, we note that the term "consent" ordinarily connotes acquiescence without reference to admissions. *See Webster's New Collegiate Dictionary* 241 (1974). Consequently, the plain and unambiguous language of the PFAA merely indicates that it authorizes and enforces consent-based protective orders. In light of the absence of any reference to the necessity that such orders be accompanied by admissions of

abuse, we find the matter excluded from the statute. *See Commonwealth v. DeFusco, supra.* Accordingly, the trial court's imposition of that requirement as a prerequisite to the enforcement of the order was erroneous.

■ The Commonwealth also contends that the trial court incorrectly concluded that the contempt proceedings were precluded by a form given to appellee prior to the disposition of the PFAA action. The trial court found that the form, which apparently indicated that the order could not be used against appellee in any other proceedings with Ms. Butts, was encompassed within the terms of the consent agreement and prevented appellee's prosecution.

Even if we were to assume that the contents of the contested form were somehow incorporated in the consent order, the propriety of the contempt proceedings would not be affected. While the form indicated that a consent order could not be utilized against appellee in a proceeding with Ms. Butts, it makes no reference to actions involving other parties. As mentioned previously, the contempt action was criminal in nature. *See Crozer–Chester Medical Center v. Moran, supra.* Consequently, it involved only appellee and the Commonwealth and was not precluded by the form's proviso. Moreover, since an examination of the consent order demonstrates that it specifically informed appellee that he could be subjected to prosecution for indirect criminal contempt upon violating its terms, we believe that the trial court, despite assertions to the contrary, was not upholding the PFAA order.

■ In light of our analysis, we are constrained to reverse the trial court and to remand the case for a contempt hearing. At that proceeding, the only issue for resolution is whether appellee engaged in conduct which violated the PFAA order. As with any other criminal proceeding, appellee may be found guilty of the charged offense only if the Commonwealth proves every element beyond a reasonable doubt. *See Vito v. Vito,* 380 Pa.Super. 258, 551 A.2d 573 (1988).

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.