**Urbanek v. Nolan**

*Timothy Wilmot,* for plaintiff.
*Ian M. Brink,* for defendant.

HERMAN, *J.,* October 1, 2008—

## INTRODUCTION

The defendant appeals this court's order of August 6, 2008 finding him in contempt for violating an order issued under the Protection From Abuse Act, 23 Pa.C.S. §6101 et seq. He filed a concise statement of matters complained of on appeal and the necessary transcripts are in the record. His appeal issue is: Whether the trial court's decision finding defendant in contempt for violation of the protection from abuse order dated April 9, 2008 constituted an abuse of discretion because the trial court's decision was against the great weight of the evidence?

## FACTUAL HISTORY

On March 17, 2008, the plaintiff Ashley Urbanek filed a petition for protection from abuse against the defendant, a current or former sexual or intimate partner.[1] The plaintiff lived at 13348 Waterloo Road and the defendant lived only a short distance away at 12011 Buchanan Trail East, Waynesboro, Pennsylvania. The plaintiff alleged the defendant had committed certain violent and/or threatening acts against her during the preceding two months. The court entered a temporary order on March 17 prohibiting him from having any contact with her, directing the sheriff to seize his weapons and ammunition and setting a hearing for March 26. The hearing was then continued until Aprill 9, 2008 upon plaintiff's motion because the defendant had not yet been served.

The parties appeared before the court on April 9 and consented in writing to a final protective order which the court endorsed. Consistent with the plaintiff's desires at that time, the order did not prohibit the defendant from *all* contact with the plaintiff but it did direct him not to abuse, stalk, harass, threaten or attempt to use physical force against her. The order was to be effective until April 1, 2011. The plaintiff was represented by counsel from Women in Need Victim Services and the defendant appeared pro se.

Washington Township Police Officer Richard Robinson Jr. filed charges of indirect criminal contempt on

---

1. The plaintiff and defendant are both over the age of majority, plaintiff's date of birth being September 30, 1987 and the defendant's being November 5, 1983.

July 14, 2008 alleging the defendant violated the April 9 order. In particular the defendant was charged with harassing and threatening Ashley with physical violence by telling her that if she did not withdraw the protection from abuse action and testify falsely on his behalf at a separate criminal hearing where he was charged with assaulting one Justin Reese, the defendant would kill her mother, stepfather and brother. He also allegedly told her that if he was sent to jail for assaulting Reese, he would kill her and Reese. The defendant appeared in court on July 23, 2008 with his court-appointed counsel and requested a continuance in order to arrange for witnesses to testify and the court granted the continuance.

According to her credible testimony at the July 28 contempt hearing, Ashley lives at 13348 Waterloo Road with her mother, stepfather and brother. The defendant lives approximately one block away. The defendant telephoned her repeatedly during the evening hours of July 13. He had her cell phone number because she had given it to his sister Jessica during a time when Ashley lived with the defendant and his family at the Nolan residence. Although Ashley initially refused the defendant's calls, she finally agreed to meet him in the driveway of her parents' home. He arrived at 1 a.m. and they stood at the bottom of the driveway and spoke for approximately 15 minutes in the dark during a heavy downpour. Ashley testified the defendant smelled of alcohol.

During their conversation, the defendant told Ashley he would kill her family and make her life a living hell if she did not comply with two demands. One demand

was that she petition to have the court discontinue the protective order because he did not want to pay the associated costs. The other was that she testify for him in a separate case where he was charged with assaulting Justin Reese with a knife at Wal-Mart. Ashley testified that she had been with the defendant at Wal-Mart when he held a knife to Reese's throat, threatened to kill him and then threw the knife at Reese. When police investigated the incident, Ashley initially lied and said the defendant had simply been defending himself against Reese's interrogation. However, she testified on July 28 that she lied to police at the time because she was afraid they were going to test her for underage drinking and she now intended to tell the truth about the incident even though the defendant wanted her to stick to her original, false version.

When Ashley went back inside the house at approximately 1:15 a.m. on July 14, she hid her soaking clothes in a laundry basket so her parents would not discover she had been standing in the rain talking to the defendant. She wanted to conceal this because she knew her parents would be angry with her for having any contact with the defendant. Ashley's mother Denise Urbanek credibly testified that she found her daughter's wet clothes at 6:30 the next morning. After questioning Ashley repeatedly about how the clothes became wet and who she was with the night before, Mrs. Urbanek learned that Ashley and the defendant had spoken during the nighttime downpour and the defendant threatened to make Ashley's life and the lives of her family members miserable. Ashley also then told her mother that her original statement to police about the Wal-Mart incident was false.

At her mother's insistence, Ashley reported her conversation with the defendant to Officer Rohinson later that day at a local gun shop, her stepfather's place of business. Officer Robinson took down Ashley's statement, reviewed the April 9 protective order, and went with two other officers to the defendant's residence at 10 p.m. on July 14. The defendant's sister Jessica was there but the defendant was not and police could not locate him. He turned himself in to the police station several days later. Officer Robinson testified his investigation revealed there was indeed rainfall in the vicinity on the late hours of July 13 into the early morning hours of July 14.

The defendant's sister Jessica testified her brother came to live with her and her parents at the beginning of July when he was first released from prison after being incarcerated on March 22 as a result of the Wal-Mart incident. She testified she often has trouble sleeping at night and it was normal for her to be awake during the nighttime hours. She testified the defendant does not have his own key to the house and she recalled no nights when he arrived home wet from the rain after being out late. However, she admitted she had no specific recollection of the night of July 13-July 14. In addition, she admitted the defendant had access to her cell phone during that time frame and there were no land lines to her residence.

The defendant testified that he was home watching movies with Jessica and sleeping on the night of July 13-July 14. He denied having called Ashley Urbanek on July 13 and denied he went to her house that night. He testified that he had to be home every night by 9 p.m.

pursuant to the conditions imposed by the County Day Reporting Center. It was his position that he told Ashley when she came to see him at the prison in April that he didn't want to see her anymore. However, the Commonwealth entered into evidence a photocopy of the front and back of an envelope addressed to Ashley sent by the defendant while he was incarcerated postmarked April 25, 2008. (Commonwealth exhibit no. 1.) Ashley had refused his letter and it was marked refused return to sender. On the back appeared the words I love you, I miss you and the outline of a heart. The defendant testified under cross-examination that it is his habit to write those words on every letter he sends to anyone he knows despite the fact he had supposedly just told Ashley he wanted their relationship to end.

Furthermore, the defendant admitted that despite his earlier testimony that he was home every night by 9 p.m. pursuant to the conditions placed on him by the Day Reporting Center, he was out fishing with his father at 10 p.m. on the night of July 14 when the three police officers went to his house to speak with him. The defendant denied drinking alcohol on the night of July 13-July 14. The evidence showed that he did not report to the Day Reporting Center at all on July 14 for class or a breathalyzer, contrary to requirements that he do so.

The Commonwealth presented evidence of the defendant's prior record for theft by unlawful taking, a crimen falsi offense in the nature of a second-degree misdemeanor which he committed in Adams County and pled guilty to in September of 2004.

The court continued the July 28 hearing to August 6 to give the Commonwealth a fuller opportunity to respond to the defendant's alibi evidence. When court reconvened on August 6, the Commonwealth had no further evidence. Counsel for the defendant and for the Commonwealth then argued their positions to the court.

The court found the defendant in contempt for violating the April 9, 2008 order which directed him not to abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to plaintiff in any place where [she] might be found. The credible evidence showed that the defendant's conduct went beyond mere contact (mere contact was intentionally not part of the April 9 order's prohibitions because the plaintiff as of that date still wanted some contact with the defendant) to encompass explicit threats of violence against Ashley and her family if she refused to ask the court to discontinue the protection from abuse action and refused to stick to her original false statement to police concerning the defendant's aggressive conduct during the Wal-Mart incident. Although defense counsel argued Ashley was not a credible witness because she has not always told the truth to either her parents or the police in connection with matters involving the defendant, the court found that Ashley's testimony was indeed believable because it was given against penal interest. Specifically, she admitted that she had initially lied to police about the Wal-Mart incident and this admission exposed her to potential prosecution and penalties for providing false information to police. In this sense, her testimony on July 28 carried enhanced indicia of reliability.

The court sentenced the defendant on August 6 to serve 75 days to six months at the Franklin County Jail, with credit for time served between July 16 and August 6. He was to be released from jail upon completion of the minimum sentence, providing he violated no prison rules. The April 9 protective order was reinstated for three years from August 6 and was modified to bar the defendant from having any direct or indirect contact with Ashley and to stay away from 13348 Waterloo Road in Waynesboro. The defendant was also given until September 5, 2008 to pay fees and costs in the amount of $317.55.

## DISCUSSION

The defendant contends that the court's finding of contempt was an abuse of discretion because it was against the great weight of the evidence. We believe the defendant is in actuality alleging that the evidence was insufficient to support the ruling.

There is a difference between a claim that a verdict was not supported by sufficient evidence and a claim that a verdict was against the weight of the evidence. Evidence is sufficient to support a verdict when it establishes each material element of the crime and its commission by the defendant beyond a reasonable doubt. Where the evidence offered to support the verdict contradicts the physical facts, human experience and the laws of nature, that evidence is insufficient as a matter of law. A defendant who prevails on this claim in the context of a post-trial motion for a judgment of acquittal cannot be retried. When reviewing this claim, the trial court views the evidence in the light most favorable to

the verdict winner, giving the prosecution the benefit of all reasonable inferences which can be drawn from the evidence. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000).

By contrast, a defendant who alleges that the verdict is against the weight of the evidence is conceding there is sufficient evidence to support the verdict and therefore the court need not view the evidence in the light most favorable to the verdict winner. A challenge to the weight of the evidence is a request for post-trial relief in the form of a new trial. A defendant is not entitled to a new trial because of a mere conflict in the testimony but instead the trial court in applying its discretion must find that the verdict shocks the court's conscience because, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.*

We are aware that the Rules of Criminal Procedure govern the Protection From Abuse Act, and the Rules of Criminal Procedure do not apply. This means that because the Act pertains to domestic relations matters, the defendant was not required to file post-trial or post-sentence motions for acquittal and/or a new trial in order to preserve issues for appeal. *Kelly v. Mueller,* 861 A.2d 984 (Pa. Super. 2004) (reversed on other grounds); section 6101; Pa.R.C.P. 1930.2(a). At any rate, despite his assertion that the finding of contempt was against the great weight of the evidence, we consider it unlikely that the defendant is seeking a new trial/hearing. More likely, his aim is to convince the Superior Court that it should reverse this court's finding because it was (allegedly) based on insufficient evidence, enter a judgment

of acquittal and vacate the sentence. We address the defendant's appeal statement from this perspective.

The Protection From Abuse Act confers upon courts the power to hold a defendant who violates a protective order in indirect criminal contempt and punish the defendant in accordance with the law. 23 Pa.C.S. §6114(a). The Act was designed to prevent domestic violence, promote the security of the home, and punish persons who violate protective orders outside of the court's presence. *Commonwealth v. Haigh,* 874 A.2d 1174 (Pa. Super. 2005).

A finding of criminal contempt must be supported by the following four elements: (1) the court's order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed as to the conduct prohibited; (2) the contemnor must have had notice of the specific order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent. *Commonwealth v. Padilla,* 885 A.2d 994 (Pa. Super. 2005). The burden of proof in an indirect criminal contempt proceeding is beyond a reasonable doubt. *Commonwealth v. Nelson,* 456 Pa. Super. 349, 690 A.2d 728 (1997).

An appellate court reviewing a contempt conviction must rely considerably on the trial court's discretion and should reverse the trial court's decision only when there has been a plain abuse of discretion. *Haigh, supra.* Discretion is abused when the course pursued by the court represents not merely an error of judgment, but where the judgment is manifestly unreasonable, the law is not applied, or where the record shows the court

acted out of partiality, prejudice, bias or ill will. *Widmer, supra.* Furthermore, it is well-established that it is the province of the trial court, when it is the trier of fact, to evaluate the credibility of the witnesses and other evidence. *Commonwealth v. Adams,* 882 A.2d 496 (Pa. Super. 2005).

The credible evidence presented during this contempt proceeding was clearly sufficient beyond a reasonable doubt to support our finding that the defendant, intentionally and with complete volition, engaged in abusive conduct toward Ashley Urbanek by harassing and threatening her with physical violence if she refused to petition the court to vacate the April 9 protective order and if she refused to testify falsely against him during the case where he was accused of assaulting Justin Reese with a knife. His conduct clearly met the definition of abuse between sexual or intimate partners found in section 6102(a)(5) of the Act: The occurrence of one or more of the following acts [k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

Harassment is defined as follows under the Pennsylvania Crimes Code: A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose. 18 Pa.C.S. §2709(a)(3); 23 Pa.C.S. §6108(a)(9). Course of conduct is a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. 18 Pa.C.S. §2709(f);

398

*Commonwealth v. Barzyk,* 692 A.2d 211 (Pa. Super. 1997).

The credible evidence showed beyond a reasonable doubt that the defendant, despite testimony he presented in the nature of an alibi defense, engaged in an abusive, harassing course of conduct toward Ashley Urbanek on the night of July 13-July 14 by calling her numerous times that evening from his home only a short distance away, by demanding to meet with her alone, immediately and past midnight, by directly threatening her face to face that he would kill her and her family if she did not petition the court to discontinue the PFA, and by threatening to kill her and Justin Reese if she refused to stick to her original false version of the Wal-Mart incident, a version which favored the defendant. Ashley's testimony at the hearing was consistent with the statements she made to her mother early the next morning and to Officer Robinson later that day as to the defendant's presence and conduct during the night. Denise Urbanek credibly testified that her daughter's clothing was still wet at 6:30 a.m. on July 14 and, according to Officer Robinson, rain had indeed fallen in the area during the night in question. We also found the defendant did have phone access to Ashley that night insofar as he knew her phone number through his sister Jessica and he had access to Jessica's cell phone, which was the only phone in his home at that time. The defendant engaged in a course of conduct against Ashley, not only by repeatedly calling her that night, but by making more than one demand upon her and by making repeated threats of physical violence, and even death, against her, her family and Reese.

The court did not find the defendant's alibi evidence believable on several points. First, he maintained he was home by 9 p.m. on July 13 and did not go out again because this was required of him by the Day Reporting Center, not only on that night but on all nights. However, his sister Jessica could not specifically recall the night of July 13-July 14, and therefore any alibi evidence she purported to offer regarding her brother's whereabouts on that night was tenuous at best. Second, Ashley testified the defendant appeared to be under the influence of alcohol during their conversation in the driveway, in part because he smelled of alcohol, and we considered it more than a mere coincidence that the defendant then failed to report to the Day Reporting Center the next morning where he might have been subject to a breathalyzer test which would reveal, not only his violation of the center's rules, but which would also support Ashley's testimony that he had come to her home the previous night. Third, according to Officer Robinson, the defendant was not at home at 10 p.m. on July 14 and the defendant himself admitted at the hearing to being out fishing with his father at the time, despite the 9 p.m. curfew. This evidence showed that, contrary to the defendant's initial testimony and the testimony of his sister, the defendant did *not* adhere strictly to his curfew at all times. Finally, in weighing the credibility of the witnesses with regard to alibi, we took into account the defendant's 2004 conviction based on a guilty plea to the crimen falsi offense of theft by unlawful taking.

The credible evidence established beyond a reasonable doubt the elements of contempt. The April 9, 2008 pro-

tective order clearly indicated to the defendant the type of conduct he was not to engage in. The defendant, by appearing in court on April 9 and consenting in writing to the specific terms of that order, had notice of the order and its restrictions. His actions on the night of July 13-July 14 were the product of his own volition insofar as he was able to acquire access to his sister's phone, made the repeated calls to Ashley, arrived at her home under his own power, and made two specific demands upon her which related directly to matters of known disagreement between them. Finally, he acted with wrongful intentions, specifically, to frighten her into seeking the dismissal of the protective order and to intimidate her into giving false testimony in the Reese assault case, and his threats of violence, and even death, against her, her family, and/or Reese were clearly aimed at compelling her compliance. *Padilla, supra.*

The defendant has failed to demonstrate exactly how the court abused its discretion in reaching its decision and has failed to show why our ruling is insufficient as a matter of law because it allegedly contradicts the physical facts, human experience and the laws of nature. Furthermore the defendant waived his right to pursue his claim that our decision was against the great weight of the evidence. We submit that we committed no errors in any aspect of this proceeding and respectfully request the appellate court to affirm the orders of August 6, 2008.

## ORDER

Now October 1, 2008, pursuant to Pennsylvania Rule of Appellate Procedure 1931(c), it is hereby ordered that

the prothonotary of Franklin County shall promptly transmit to the prothonotary of the Superior Court the record in this matter, along with the attached opinion sur Pa.R.A.P. 1925(a).

Pursuant to Pa.R.C.P. 236, the prothonotary shall give written notice of the entry of this order, including a copy of this order, to each party's attorney of record and to each party, and shall note in the docket the giving of such notice and the time and manner thereof.