J-S07002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KYLE J. BINGAMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AIMEE M. BINGAMAN | : | No. 1210 MDA 2024 |

Appeal from the Decree Entered August 7, 2024
In the Court of Common Pleas of Montour County Civil Division at No(s):
2021-00264

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JULY 23, 2025**

Appellant Kyle J. Bingaman (Husband) appeals from a divorce decree that, among other things, provided for equitable distribution of marital property and awarded alimony to Wife for a period of eighteen months. Husband argues that the trial court failed to consider statutorily required factors in ruling on Husband's exceptions to the report and recommendation from the special master.  We affirm in part, vacate in part, and remand for further proceedings.

Briefly, Husband and Wife were married in October 2009 and are the parents of two minor children.  *See* Trial Ct. Op., 10/18/24, at 1 (unpaginated).  The parties separated after almost twelve years of marriage in August of 2021 and Husband filed for divorce in September of 2021.  Wife counterclaimed for alimony.  The trial court appointed a special master to hear the parties' equitable distribution and alimony claims and on May 25, 2023,

Michael P. Dennehy, Esq. (the Master), held a hearing at which the parties were represented by counsel and presented evidence.[1]

At the hearing, Husband testified that in August of 2021 he obtained a temporary order against Wife pursuant to the Protection From Abuse (PFA) Act[2] in August of 2021. N.T., 5/25/23, at 13-16. In September of 2021, the PFA court entered a final order that "completely evicted and excluded" Wife from the marital residence until the order expired on September 23, 2022. ***See id.*** at 13-16, 18. Husband testified that Wife was charged with "terroristic threats with intent to terrorize another, simple assault, and harassment subject other to physical contact" for her conduct which led him to file the PFA petition, but that the charges were dropped. ***Id.*** at 19-21, 92.

Wife's testimony only addressed her alleged misconduct that led to the PFA order when she said that "I was forced out [of the marital residence] with a PFA[]" and "I was fired from [my job as a school van driver] because of . . . what I got in trouble for, the – supposedly the charges, so I was let go because of the charges that were brought for me that happened in the event."

---

[1] Pennsylvania Rule of Civil Procedure 1920.55-1 provides for two alternative hearing procedures for divorce matters referred to a hearing officer such as a master, with the first option set forth at Rule 1920.55-2 and the second option set forth at Rule 1920.55-3. ***See*** Pa.R.Civ.P. 1920.55-1 to 1920.55-3. Montour County has elected to proceed by the procedures set forth in Rule 1920.55-2. ***See*** Pa.R.Civ.P. 1920.55-1(a); Domestic Relations Procedural Rules Committee, https://www.pacourts.us/courts/supreme-court/committees/rules-committees/domestic-relations-procedural-rules-committee (last visited June 9, 2025).

[2] 23 Pa.C.S. §§ 6101-6122.

*Id.* at 128-29. The record reflects that Husband obtained the PFA order by agreement of the parties. *See* Trial Ct. Op., 10/18/24, at 1, 6; Wife's Pet. for Spec. Relief, 10/19/21, at 1 (unpaginated); Wife's Pet. for Spec. Relief, 11/4/21, at 1 (unpaginated); Husband's Answer to Wife's Pet. for Spec. Relief, 11/9/21, at 1.[3]

The Master issued a report to the trial court on August 2, 2023 that set forth the value of the parties' marital assets and liabilities, including the marital residence and a "2021 Jay[co] Flight Camper." Master's Rpt., 8/2/23, at 6-7 (unpaginated). Therein, the Master explained,

> While Husband has made all the payments on the mortgage since separation, he has had the sole use and enjoyment of the property without having to account for any financial value of the same to Wife. . . . [T]he mortgage, taxes, repairs, and upkeep of the marital residence since the date of separation would be sufficient to offset any claim that Wife might have towards a fair rental credit on this property. . . .
>
> Husband desires to retain the residence . . . [and requests] credits on the mortgage payments he made and the repairs he made to the marital residence. [S]uch request for credits is being denied as these payments of Husband are being used to offset any fair rental credit to which Wife may be otherwise entitled.
>
> Husband was also requesting credits on payments he made on the camper loan since the date of separation. The undersigned finds that it is appropriate and is accomplishing that by offsetting the negative net value of the camper based upon the date of

_____

[3] The record does not contain Husband's PFA petition, the temporary PFA order, or the final PFA order. However, Wife twice alleged in petitions for special relief that she was excluded from the marital residence pursuant to a PFA order entered by agreement of the parties, and Husband admitted to this allegation in his answer. *See* Wife's Pet. for Spec. Relief, 10/19/21, at 1 (unpaginated); Wife's Pet. for Spec. Relief, 11/4/21, at 1 (unpaginated); Husband's Answer to Wife's Pet. for Spec. Relief, 11/9/21, at 1.

separation balance of the loan on the same, and then awarding this asset to Husband. Payments made by Husband since separation would then be given to his benefit, whether he chooses to keep the camper for himself, or whether he chooses to sell it and retain whatever price he shall receive. If there is a deficiency at the time of sale, Husband is being compensated for covering the same by being granted the negative . . . net equity in the camper [on the date of separation] when determining the overall equitable distribution scheme.

*Id.* at 9-10.

While finding that most equitable distribution factors, as set forth in Section 3502 of the Divorce Code,[4] weighed similarly between Husband and Wife, the Master also found that

Wife [] has had a substantial decrease in her standard of living since separation. Wife also has a number of health issues which potentially have an impact on her ability to maintain substantial employment until normal retirement age. There is also earnings disparity with Husband earning significantly more than Wife, and this earnings disparity is expected to continue for a number of years into the future, leaving Husband in a better position for future acquisitions of capital assets.

While Husband only has a modest retirement plan, Wife has no retirement plan. Husband does have some pre-marital assets, although these are not of tremendous value, Wife does not have any significant non-marital assets.

*Id.* at 11. The Master further found that "Wife's decreased earnings were due to a situation of her own making" as her prior employment had been terminated due to "behavior that resulted in the legal actions against her" and that "her earnings would not be as limited as they were if Wife had not engaged in the [referenced] behavior[.]" *Id.* at 12.

_____

[4] 23 Pa.C.S. § 3502(a).

- 4 -

"[M]indful that Pennsylvania is a 'no-fault' State[,]" the Master did not factor in "Wife's behavior in August 2021[]" when he recommended that a "55% - 45% division in favor of Wife" best effectuated economic justice between the parties. *Id.* at 13-14. To effectuate the suggested distribution of marital property, the Master recommended that Husband retain the marital residence, the camper, and a 2019 Chevy Equinox, thereby assigning all of the parties' real property and motor vehicles to Husband. *Id.* at 18-19. The parties would each retain their individual retirement, investment, and bank accounts and personal property. *Id.* at 19. After accounting for the value of property assigned exclusively to Husband, the Master concluded that Husband would need to make a lump sum payment to Wife of $93,215.15, within 90 days of the report, to effectuate the 55% division of property to Wife. *Id.*; *see also id.* at Sch. B.

With regard to alimony, the Master noted that "marital misconduct engaged in prior to the date of separation" could be considered in awarding alimony and found that "Wife did engage in substantial marital misconduct, which was the precipitating factor in the filing of this divorce[.]" *Id.* at 15-16 (unpaginated). He also noted that Husband had stable employment at an hourly wage of $24.97 while Wife was employed part-time at an hourly rate of $12.35, and that Husband's standard of living "appears to be approximately the same as prior to separation[]" while Wife's "has significantly decreased." *Id.* at 5-6 (unpaginated). The Master recommended that Wife be awarded

alimony in the amount of $450 a month for a period of thirty months, explaining that:

> [E]ven though Wife is receiving the greater share of the marital estate, her earnings, even using those earnings prior to separation, still leave her with financial difficulties in maintaining herself through appropriate employment. Wife has indicated that she has various medical problems, however, there is no[] proof that these medical problems are such that they would prevent her from maintaining substantial gainful employment. There is no indication that Wife has sought to be qualified for social security disability or any other disability program and no medical evidence was presented . . . that Wife's medical problems render her incapable of self-support. The undersigned believes Wife is capable of developing appropriate employable skills, but that a modest amount of time is necessary for her to reintegrate fully back into the workforce. Accordingly, the undersigned finds an award of alimony is appropriate in favor Wife. Tempering the amount and duration of that award[] is Wife's receipt of the greater share of the marital estate and Wife['s] substantial marital misconduct which precipitated the divorce.

*Id.* at 16-17.

On August 21, 2023, Husband filed ten exceptions to the Master's report. *See* Husband's Exceptions, 8/21/23, at 1-2. On October 25, 2023, the trial court heard argument on Husband's exceptions and on February 14, 2024 entered an order that "confirmed" the Master's report, subject to two modifications in Husband's favor, and stated that "[i]n all other aspects the findings of the [] Master are confirmed." *See* Trial Ct. Order, 2/14/24, at 8-9 (some formatting altered).[5] Specifically, the trial court extended the

_____

[5] The record does not contain a transcript of the oral argument held on October 25, 2023. Pa.R.A.P. 1926 provides that "[i]f anything material to a party is

*(Footnote Continued Next Page)*

recommended time for Husband to make the lump sum payment to Wife from ninety days to six months and reduced the recommended alimony award to $430 per month for a period of eighteen months. *Id.* at 9. Both modifications were directed to take effect from the date of the order. *Id.* On August 7, 2024, the trial court entered a divorce decree, which "approved" the Master's report, as amended by the trial court's February 14, 2024 order. *See* Trial Ct. Decree, 8/7/24.[6]

Husband filed a timely notice of appeal and both Husband and the trial court complied with Pa.R.A.P. 1925.

_____

omitted from the record . . . or is misstated therein, the omission or misstatement may be corrected[.]" Pa.R.A.P. 1926(b). "[T]he responsibility rests upon the appellant to ensure that the certified record on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v Bongiorno*, 905 A.2d 998, 1000 (Pa. Super. 2006) (*en banc*) (citation omitted). Nevertheless, we decline to find waiver because the omission of the transcript of oral argument from the certified record does not impede our review.

[6] This Court previously issued a Rule to Show Cause Order because "the decree states that the report and recommendations are 'approved' . . . but does not specifically adopt the report and recommendation." 1210 MDA 2024, Order, 9/10/24 (citations omitted). On September 18, 2024, Appellant filed a response asserting, *inter alia*, that the decree appealed from "disposes of all claims related to the divorce." *See* Appellant's Answer to Rule to Show Cause, 9/18/24, at 3 (unpaginated). This Court thereafter discharged the Rule to Show Cause, noting that this panel could revisit it. *See* 1210 MDA 2024, Order, 9/20/24. Mindful that the trial court "confirmed" the master's recommendations with modifications on February 14, 2024, and then on August 7, 2024 "approved" the amended recommendations in the same order in which it granted the parties' divorce decree, we find no reason to disturb the prior determination that the instant decree is an appealable order. *See Fried v. Fried*, 501 A.2d 211 (Pa. 1985) (issues in divorce are reviewable after entry of divorce decree and resolution of all economic issues).

On appeal, Husband presents the following issues, which we have reordered as follows:

1. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to give Husband credit for the payments he was solely responsible for towards the mortgage?

2. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to consider Husband's [PFA] order against Wife, removing her from the marital residence when the Master awarded Wife a fair rental credit?

3. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master erred when he awarded Wife a fair rental credit without testimony or evidence on the fair rental value of the marital residence?

4. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to consider the required upkeep to preserve the marital residence when awarding Wife 55% of the division of marital property?

5. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to consider the payments Husband made towards the camper when awarding wife 55% of the division of marital property?

6. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to consider the high likelihood the camper will sell for less than the loan amount leaving a significant deficit Husband will be responsible to cover?

7. Whether the [trial] court erred when it confirmed the divorce Master's report and recommendation when the Master failed to consider the upkeep Husband put into the camper to preserve it when awarding Wife 55% of the division of marital property and requiring him to be responsible for the sale and remaining loan?

8. Whether the Master erred when he failed to consider Wife's misconduct when awarding her alimony?

9. Whether the [trial] court erred when it awarded Wife alimony without evidence of her alleged inability to work due to health concerns?

Husband's Brief at 7-9 (some formatting altered).[7]

### Equitable Distribution

We discuss Husband's first seven issues together because they all relate to equitable distribution. Husband's main contention is that the trial court erred in awarding 55% of the parties' marital property to Wife. *See id.* at 12-25. Husband notes that he "made mortgage payments on time; [] addressed any required maintenance needs to prevent depreciation []; and [] paid the

---

[7] Husband's Rule 1925(b) statement and brief include a claim that "the [trial court] erred when it awarded alimony to Wife?" Husband's Brief at 9; Husband's Rule 1925(b) Statement at 2 (unpaginated). Husband did not raise this issue in his ten Exceptions to the recommendations in the Master's report, however. Accordingly, the trial court did not have an opportunity to address it. Therefore, Husband failed to preserve this issue by raising it below, and it is waived. *See* Pa.R.A.P. 302 (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Additionally, Husband included in his Exceptions a claim that ninety days was too short a time for him "to sell the camper and refinance the marital residence" to make a "lump sum payment to Wife[,]" and included a similar claim in his Rule 1925(b) statement and brief, after the trial court modified this recommended period to six months. Husband's Brief at 9; Husband's Rule 1925(b) statement at 2 (unpaginated). Husband's brief addresses this claim in one paragraph, without citation to authority or the record, that "[n]o evidence was received on Husband's ability to refinance the marital residence and sell the camper to establish the ability to refinance the residence within a 6-month timeframe[.]" Husband's Brief at 26. Accordingly, we conclude this claim is waived on appeal for lack of development. *See* Pa.R.A.P. 2119(a)-(c); *see also In re Estate of Sagel*, 901 A.2d 538, 541 (Pa. Super. 2006) ("[f]ailure to cite pertinent authority in support of an argument results in waiver").

taxes and insurance on the [marital] residence." *Id.* at 20-21. Husband contends that, in making a recommendation concerning the marital residence, the Master "failed to consider the amount of funds Husband was responsible for, but rather offset this request with the potential claim of Wife for fair rental value[,]" a claim that Wife did not raise herself. *Id.* at 12-14.[8] Husband further claims that, because Wife had "been excluded from the marital home by the [PFA] order, [Husband] may raise an equitable defense against [Wife's] claim to rental credit for the time period in which the order was in effect[;]" that is, where a PFA "order was entered on the basis of [] misbehavior" that the misbehaving spouse is "not entitled to any rental credit after the PFA was issued against him [or her]." *Id.* at 15-16, (citing *Lee v. Lee*, 978 A.2d 380, 381-82, 387-88 (Pa. Super. 2009)). Lastly, Husband argues that the Master erred in awarding a fair rental value to Wife "without evidence establishing a fair rental [value.]" *Id.* at 19.

Regarding the camper, Husband argues that in awarding the camper to Husband, the Master "failed to properly consider the significant amount of money Husband had contributed towards the camper when he was forced to be responsible for preserving a marital asset." *Id.* at 22-23. Further,

---

[8] Husband also argued that the Master failed to give consideration to the fact that he "was the primary custodian for the parties' two minor children from August 2021 until December 2022." *Id.* at 14. As Husband failed to raise this issue in his Exceptions, and the record does not reflect that he otherwise raised this argument before the trial court, it is waived pursuant to Pa.R.A.P. 302. *See* Pa.R.A.P. 302 (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Husband argues that the Master "failed to consider the high likelihood the camper will sell for less than the loan amount leaving a significant deficit Husband will be responsible to cover[]" and "to consider the upkeep Husband put into the camper to preserve it[.]"  *Id.* at 25.[9]

Our standard of review for equitable distribution claims is

whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.  Additionally[, i]n determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole.  We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Martin v. Martin*, 320 A.3d 113, 120 (Pa. Super. 2024) (citations omitted). Where a master is appointed by the trial court, "the trial court is required to make an independent review of the report and recommendations to determine whether they are appropriate."  *Kohl v. Kohl*, 564 A.2d 222, 224 (Pa. Super. 1989) (citation omitted).

---

[9] With regard to maintenance and upkeep to the camper, the record reflects that Husband testified that the "only maintenance that needed [to be] done to it is to winterize [it]" and that Husband did this by "run[ning] antifreeze through the water line.  N.T., 5/25/23, at 60-61.

- 11 -

An award of equitable distribution must be crafted to "[e]ffectuate economic justice between [the] parties[.]" 23 Pa.C.S. § 3102(a)(6). In conjunction with any award of alimony, equitable distribution should "[e]nsure a fair and just determination and settlement of [the parties'] property rights." *Martin*, 320 A.3d at 120. Section 3502(a) of the Divorce Code mandates that a trial court must assign "marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S. § 3502(a).

These factors set forth in Section 3502(a) include, in relevant part:

(1) The length of the marriage.

* * *

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

* * *

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

* * *

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

23 Pa.C.S. § 3502(a)(1), (3), (5)-(10), (10.2).

In awarding a fair rental credit, "each party is entitled to his or her equitable share of marital property, including the fair rental value of the marital residence[.]" **Schneeman v. Schneeman**, 615 A.2d 1369, 1377 (Pa. Super. 1992). Further, "the trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distributory scheme is equitable. In equitably distributing the fair rental value . . . , the trial court must consider the efforts of each party to preserve the asset." **Id.**

Where one spouse has obtained a PFA that excludes the other spouse from the marital residence, the non-possessory spouse may be prohibited from claiming a fair rental credit for the marital residence while so excluded. **See Lee**, 978 A.2d at 388. In **Lee**, this Court explained:

When a spouse has been excluded from the marital home by a [PFA] order, the other spouse may raise an equitable defense against the [non-possessory] spouse's claim to rental credit for the time period in which the [PFA] order was in effect.

\*　　\*　　\*

We [] note that it is within the discretion of the trial court to grant rental value as a part of equitable distribution . . . [on t]he basis . . . that the party out of possession of jointly owned property . . . is entitled to compensation for her/his interest in the property. Generally, parties have an equal one-half interest in the marital property and thus the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. . . . [T]he general rule is that the dispossessed party is entitled to a credit . . . provided there are no equitable defenses to the credit.

- 13 -

\*    \*    \*

[Wife] maintains that the PFA was entered as a result of Husband's unannounced arrival at the marital home . . . and his demand that she relinquish custody of their son.  When Wife refused, Husband forcibly gained entry . . . by grabbing and shoving her, compelling her to lock herself and the child in a [] bedroom.  Wife maintains that Husband was provided a hearing on these claims, and that the court, in granting the PFA, ruled she was more credible.

\*    \*    \*

In all matrimonial causes, the [trial] court shall have full equity power and jurisdiction. . . .  He who comes into a court of equity must come with clean hands.

\*    \*    \*

In this instance, it is clear that Husband's behavior prompted the PFA, which in turn excluded him from the home.[fn9] . . .  We therefore conclude that equity prohibits Husband from receiving a monetary credit from Wife for the time he was excluded by the PFA, as the order was entered on the basis of his misbehavior toward her. . . .  Husband was not entitled to any rental credit after the PFA was issued against him.

> [fn9] [W]hat is relevant to our discussion is only that Husband perpetrated some hostile act toward Wife, and that the [PFA court] found the incident sufficiently grave to justify excluding him from the marital home and to enter a PFA order against him.

\*    \*    \*

[We] remand for the [trial] court to consider the amount of rental credit for the period from the parties' separation through the initiation of the PFA . . . and direct the court to exclude from rental credit any time that the PFA was in effect, and to recalculate the remaining amount of credit.

*Id.* at 381-82, 385-88 (citations and footnotes omitted and some formatting altered).

- 14 -

In considering the effect of PFA orders in non-PFA matters, this Court has held that a PFA defendant's "consent-based agreement[]" to entry of a PFA order does not equate to an admission of abuse. *See Commonwealth v. Nelson*, 690 A.2d 728, 731 (Pa. Super. 1997). Where a PFA order is entered by consent or agreement of the parties, that order "does not constitute evidence of abuse or a judicial determination" of abuse. *Corrado v. Corrado*, 1789 EDA 2023, 2024 WL 688281, at *10 (Pa. Super. filed Feb. 20, 2024) (unpublished mem.) (citing, *inter alia*, *Nelson*, 690 A.2d at 731).[10]

In reviewing this equitable distribution award, we are mindful that Section 3502(a) of the Divorce Code mandates that equitable distribution be carried out "without regard to marital misconduct[,]" while *Lee* permits misconduct to be considered under equitable principles for the limited purpose of determining whether a non-possessory spouse may claim a fair rental credit on the marital residence. *See* 23 Pa.C.S. § 3502(a); *see also Lee*, 978 A.2d at 388.

Here, Husband testified regarding Wife's misconduct, which led to the PFA petition. *See* N.T., 5/25/23, at 13-16. When discussing alimony in his report, the Master found that "Wife did engage in substantial misconduct, which was the precipitating factor in the filing of this divorce in August of 2021." Master's Rpt., 8/2/23, at 16. The trial court, in turn, adopted the

---

[10] *See* Pa.R.A.P. 126(b) (providing that we may cite to non-published decisions of this Court filed after May 1, 2019 for their persuasive value).

Master's equitable distribution recommendations and found that "Wife was removed/barred from the marital residence as a result of the [PFA order] and related criminal charges filed against her[]" and confirmed "all other aspects of the findings" of the Master's report. Trial Ct. Order, 2/14/24, at 6, 8.

We recognize that, unlike in **Lee**, the PFA order here was entered by agreement of the parties, rather than after a contested hearing. **See Lee**, 978 A.2d at 388, n.9. However, the Master concluded that Wife's "substantial misconduct" in August of 2021 precipitated the divorce, and the record reflects that the PFA order was entered as a result of the same misconduct. Master's Rpt., 8/2/23, at 16; **see also** N.T., 5/25/23, at 14-18. Further, the trial court confirmed the Master's finding that Wife was excluded from the marital residence "as a result of the PFA order" and due to her "substantial misconduct." Trial Ct. Order, 2/14/24, at 6, 8. Accordingly, even though the PFA order against Wife was entered by agreement, rather than after a contested hearing, the record reflects a judicial finding of misconduct by Wife, who was excluded from the marital residence by a PFA order due to this misconduct. **See Lee**, 978 A.2d at 388; **see also Martin**, 230 A.3d at 120; **Kohl**, 564 A.2d at 224; **but cf. Nelson**, 690 A.2d at 731; **Corrado**, 2024 WL 688281, at *10.

Therefore, because the trial court found that Wife's exclusion from the marital property was due to marital misconduct, we conclude that Husband had an equitable basis to contest the award of a fair rental credit to Wife for the one-year period she was legally excluded from the marital residence. **See**

*Lee*, 978 A.2d at 388. Accordingly, the trial court erred in awarding Wife a credit for a portion of the fair rental value of the marital residence for the period in which she was excluded from the residence pursuant to the PFA order. *See id.* However, Wife remains entitled to a fair rental credit on the marital residence for the periods of time when she was not subject to the PFA's exclusion provision. *See id.* at 390.

Aside from the fair rental credit question, the Master found that Husband was "responsible for the accumulation of the greater part of the marital assets, primarily the equity in the marital residence[]" and that he had preserved the parties' assets "until the time of equitable distribution." Master's Rpt., 8/2/23, at 12. The Master noted that "Husband desires to retain the residence and Wife does not appear to object[]" and concluded "that the funds paid by Husband towards the mortgage, taxes, repairs, and upkeep . . . since the date of separation would be sufficient to offset any claim that Wife might have towards a fair rental credit on this property." *Id.* at 9. With regard to the camper, the Master noted Husband's loan payments on the camper and that the value of the camper was less than the loan principal, and accordingly assigned a negative value for this asset. *Id.* at 7, 10, 18-19. The Master recommended that Husband be awarded the marital residence, the 2019 Chevy Equinox, and the camper, leaving Wife without possession of any real property or motor vehicles acquired during the marriage. *Id.* at 6-7.

After reviewing "the hearing transcript, as well as the exhibits entered into the record by both parties," the trial court adopted the Master's findings

- 17 -

and the majority of the recommendations, with two modifications as noted above. Trial Ct. Order, 2/14/24, at 8-9 (some formatting altered). In so doing, the trial court found that the Master's report was "balanced by the mandate to achieve economic justice between the parties" and "that [the] analysis hinges upon all of the equitable distribution criteria" in Section 3102(a) of the Divorce Code. *Id.* at 6 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion or error of law in the trial court's adoption of the Master's recommendation of a 55% share of the parties' marital property to Wife and, therefore, find no merit to Husband's remaining equitable distribution claims. *See Martin*, 230 A.2d 120; *see also* 23 Pa.C.S. § 3102(a)(6) (directing that equitable distribution should "[e]ffectuate economic justice between parties"). Therefore, we vacate the portion of the decree pertaining to the rental credit and remand for the trial court to recalculate the amount of any fair rental credit applied in Wife's favor to exclude any time in which the PFA excluding Wife from the marital residence was in effect and to recalculate the remaining amount of rental credit due to Wife, if any. *See Lee*, 978 A.2d at 390. We affirm the trial court's decree regarding equitable distribution in all other respects.

**Alimony**

Husband also argues that in calculating Wife's alimony award, the Master "failed to adequately provide enough weight" to Wife's "marital misconduct" and, conversely, gave too much weight to Wife's "health status when no evidence was provided of such." Husband's Brief at 31-32, 36-37.

Husband argues that Wife's misconduct "caused her own standard of living to change[,]" as "her actions towards Husband caused her to lose her job[,]" and that Wife provided "[n]o evidence" that her "health had, or would have, any impact on her ability to work until retirement, as stated by the . . . Master." *Id.* at 32-33.

This Court has explained that

> [a]n award of alimony may be reversed where there is an apparent abuse of discretion or there is insufficient evidence to support the award. The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself[,] through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and the development of an appropriate employable skill.

*Crocker-Fasulo v. Fasulo*, 292 A.3d 591, 596 (Pa. Super. 2023) (citations omitted); *see also Martin*, 230 A.3d at 118. Where the record "supports the trial court's findings[]" with respect to alimony, it is not the role of this Court to "reweigh the evidence." *Strang v. Strang*, 513 WDA 2021, 2022 WL 1486588, at *3 (Pa. Super. filed May 11, 2022) (unpublished mem.).

Section 3701 of the Divorce Code governs claims for alimony and directs that

> in determining whether alimony is necessary and in determining the nature, amount, duration . . . of alimony, the court shall consider all relevant factors, including:

- 19 -

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

> (17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. 3701(b).

Here, the Master's report acknowledged and analyzed the alimony factors set forth in Section 3701(b), and the trial court reviewed and adopted the findings and the majority of the recommendations therein. As noted above, the Master found that Wife "engage[d] in substantial marital misconduct," and that she offered "no proof that [her] medical problems are such that they would prevent her from maintaining substantial gainful employment[,]" belying Husband's contention that the Master relied on Wife's health status without evidence in crafting a recommended alimony award. Master's Rpt., 8/2/23, at 15-17. In addition to these factors, the Master also took into account Husband's higher earning capacity and Wife's significantly decreased standard of living. *See id.* at 5-6.

Section 3701(b) does not require that marital misconduct or abuse be accorded a certain weight, only that the trial court "shall consider" this factor. 23 Pa.C.S. 3701(b). Accordingly, we decline to reweigh the alimony factors and find no abuse of discretion or error of law in the trial court's award of alimony. *Id.*; *see also Crocker-Fasulo*, 292 A.3d at 596; *Martin*, 230 A.3d at 118; *Strang*, 2022 WL 1486588, at *3. Therefore, Husband is not entitled to relief on his alimony claims.

In sum, for the reasons stated above, we vacate the portion of the trial court's decree pertaining to the fair rental credit and affirm with respect to

alimony and equitable distribution in all other respects. We remand for the trial court to (1) recalculate the rental credit to Wife, excluding any time in which she was excluded from the marital residence pursuant to the PFA order; (2) recalculating the remaining amount of rental credit, if any, due to Wife; and (3) recalculate the lump sum award to Wife with the recalculated amount of rental credit.

Decree affirmed in part and vacated in part. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/23/2025